TEXAS DEPARTMENT OF PUBLIC
SAFETY, Appellant

v.

Robert E. GRISHAM, Individually and
as Next of Friend of Robert T.
Grisham, Appellee.

No. 14–06–01053–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 16, 2007.

Katherine Wells Howard, Austin, Frank D. Lanter, Houston, TX, for appellants.

Jane S. Leger, Beaumont, TX, for appellees.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## OPINION

CHARLES W. SEYMORE, Justice.

The Texas Department of Public Safety ("TDPS") appeals the trial court's denial of its plea to the jurisdiction. In one issue, TDPS contends the facts alleged by Robert E. Grisham, individually and as next of

friend of Robert T. Grisham, appellee, did not demonstrate a waiver of sovereign immunity because there was no use of a motor vehicle or property and no nexus between the injury and operation or use of the vehicle. We reverse and render judgment dismissing appellee's claims against TDPS for want of jurisdiction.

## I. Background

On the evening of November 12, 2005, Robert E. Grisham, and his minor son, Robert T. Grisham, were involved in a motor vehicle accident while driving eastbound on IH–10 near Weimar, Texas. The accident occurred when Grisham approached the scene of another accident. The first accident was caused by co-defendant, Martha Cowling, who had driven west in the eastbound lanes while intoxicated. As a result, Cowling's car was partially obstructing the left lane.[1] In response, a TDPS trooper was dispatched to the scene of Cowling's accident.

As Grisham approached the site of Cowling's wrecked vehicle, he was in the right lane. He observed a TDPS cruiser parked on the right shoulder of the highway with overhead emergency lights activated. Upon seeing the TDPS cruiser on the shoulder of IH–10 with emergency lights activated, Grisham changed to the left lane. Shortly after changing lanes, Grisham collided with Cowling's vehicle in the left lane, causing physical injuries to himself and his son.

Grisham filed suit against TDPS and Cowling. In his live pleading, Grisham alleged that the TDPS trooper used or misused the TDPS cruiser and overhead emergency lights in a manner that funneled Grisham directly into the disabled vehicle.

TDPS answered suit and asserted sovereign immunity in its plea to jurisdiction. After a hearing, the trial court denied TDPS's plea to the jurisdiction. TDPS appeals this denial

## II. Standard of Review

A unit of state government is immune from suit unless the state consents. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999); *City of Kemah v. Vela,* 149 S.W.3d 199, 202 (Tex. App.-Houston [14th Dist.] 2004, pet. denied). Sovereign immunity from suit defeats a court's subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Jones,* 8 S.W.3d at 638–39. A trial court must address whether it has subject matter jurisdiction over a case before litigation may proceed. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542 (Tex.2003). To determine if the plaintiff has met that burden, "we consider the facts alleged by the plaintiff and to the extent it is relevant to the jurisdictional issue the evidence submitted by the parties." *Tex. Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 868 (Tex.2001).

Whether a court has subject-matter jurisdiction is a question of law. *Miranda,* 133 S.W.3d at 226. Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject-matter jurisdiction is a question of law reviewed de novo. *Id.* Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law. *Id.*

---

1. There are two-eastbound lanes of traffic in this area of IH–10.

When a party challenges the pleadings in a plea to the jurisdiction, we determine if the pleader alleged facts affirmatively demonstrating the court's subject-matter jurisdiction. *Id.* We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, just as the trial court is required to do. *Id.* at 227.

When a jurisdictional challenge implicates the merits of a plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact-finder. *Id.* at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

### III. TEXAS TORT CLAIMS ACT

In its sole issue, TDPS contends the conduct of its trooper did not amount to a waiver of sovereign immunity. Specifically, TDPS contends that the trooper did not negligently use or misuse his vehicle or overhead emergency lights when he parked on the right shoulder of the highway with emergency lights activated. TDPS further argues that there was no nexus between the use or operation of the vehicle and the injury.

In response, Grisham argues the trooper negligently used or misused his cruiser by parking it on the right shoulder with the emergency lights activated because the trooper should have anticipated based on the "Move Over Act" that Grisham would change lanes from the unobstructed right lane to the left lane. *See* TEX. TRANSP. CODE ANN. § 545.157(a) (Vernon Supp. 2006). Grisham argues that the accident would not have occurred but for the trooper's operation or use of the cruiser and emergency lights.

The Texas Tort Claims Act ("TTCA") allows an individual to sue a governmental unit "only in certain, narrowly defined circumstances." *Tex. Dept. Criminal Justice v. Miller,* 51 S.W.3d 583, 587 (Tex.2001) (citing *Dallas County Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 341 (Tex.1998)). Under the TTCA, a governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 2005).

The Legislature did not define the words "operation" and "use" in section 101.021 of the TTCA. *City of Kemah,* 149 S.W.3d at 204. The Texas Supreme Court has defined "operation" as "a doing or performing of a practical work" and "use"

as "to put or bring into action or service; to employ for or apply to a given purpose." *Whitley*, 104 S.W.3d at 542–43 (Tex.2002); *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex.1992).

A governmental unit is not liable for injuries proximately caused by a negligent employee unless the injury "arises from the operation or use of a motor-driven vehicle." TEX. CIV. PRAC. & REM.CODE ANN. § 101.021. "Arises from," as it is used in the statute, requires a nexus between the injury and the operation or use of the vehicle. *Whitley*, 104 S.W.3d at 543; *LeLeaux*, 835 S.W.2d at 51. This nexus requires more than mere involvement of property. *Whitley*, 104 S.W.3d at 543. Rather, " 'the [vehicle]'s use must have actually caused the injury.' " *Whitley*, 104 S.W.3d at 543 (quoting *White*, 46 S.W.3d at 869); *City of Kemah*, 149 S.W.3d at 204. "[T]he operation or use of a motor vehicle 'does not cause injury if it does no more than furnish the condition that makes the injury possible.' " *Whitley*, 104 S.W.3d at 543 (quoting *Bossley*, 968 S.W.2d at 343); *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex. 1995) ("Legal cause is not established if the defendant's conduct or product does no more than furnish the condition that makes the plaintiff's injury possible."). The Texas Supreme Court has noted that this nexus requirement is consistent with the clear intent of the TTCA that the waiver of sovereign immunity be limited. *LeLeaux*, 835 S.W.2d at 51.

This court focused on the nexus requirement in *City of Kemah v. Vela*. 149 S.W.3d at 204–05. In *City of Kemah*, a police officer stopped Gabriel Vela for an expired registration sticker. *Id.* at 201. Vela stopped his car in the left turn lane. *Id.* The officer parked his patrol car behind Vela's car and activated the emergency lights. *Id.* During the stop, the officer

discovered Vela had an outstanding traffic warrant. *Id.* The officer arrested Vela, placed him in handcuffs, and seated him in the backseat of the patrol car. *Id.* A second police officer arrived and parked his patrol car with the emergency lights activated behind the first officer's parked patrol car. *Id.* Shortly thereafter, a truck drove into the back of the second patrol car, forcing the car into the back of the first patrol car, where Vela was seated. *Id.* Vela sustained injuries. *Id.* At the time of the collision, neither officer was in the car. *Id.* Vela sued the City of Kemah and the truck driver for negligence. *Id.* Vela complained that the officers negligently parked or stopped their patrol vehicles in the turning lane of the highway and but for their operation or use of the patrol vehicle to house Vela upon his arrest, the accident causing his injuries would not have occurred. *Id.* at 204. The City of Kemah asserted sovereign immunity in a plea to the jurisdiction, which the trial court denied. *Id.* at 201–02. On appeal, this court reversed the trial court and held that sovereign immunity was not waived. *Id.* at 204–05. Specifically, this court explained that although the officers used a patrol car to house Vela after his arrest, it was not this use of the car that caused his injuries. *Id.* at 205. Instead, the truck driver caused Vela's injuries by colliding with the parked patrol cars. *Id.*

Here, Grisham argues that he changed lanes because he was acting in accordance with the Move Over Act, which was enacted by the Legislature in 2003. *See* Move Over Act, 78th Leg., R.S., ch. 327, 2003 Tex. Gen. Laws 1401. Under the Move Over Act, a driver on a highway with two or more lanes, traveling in the direction of an emergency vehicle is required to (1) vacate the lane closest to the emergency vehicle, or (2) slow to a speed not to exceed twenty miles per hour less

than the posted speed limit when the posted speed limit is twenty-five miles per hour or more. TEX. TRANSP. CODE ANN. § 545.157(a).[2] Grisham contends the TDPS officer was negligent because he failed to consider the Move Over Act when he parked the cruiser on the shoulder with the lights activated. Grisham contends the action of parking and turning on the lights, in conjunction with the Move Over Act, "funneled" him into the left lane.

However, in this case, Grisham's injury was caused by his collision with Cowling's disabled vehicle that was obstructing the left lane. "[T]he operation or use of a motor vehicle 'does not cause injury if it does no more than furnish the condition that makes the injury possible.'" *Whitley,* 104 S.W.3d at 543 (quoting *Bossley,* 968 S.W.2d at 343). Here, the TDPS cruiser parked on the right shoulder with the lights activated merely furnished the condition that made Grisham's injury possible. The cruiser did not actually cause the injury. Under the Move Over Act, Grisham had two alternatives. Grisham could either move over to the left lane or reduce his speed to at least twenty miles per hour below the speed limit. *See* TEX. TRANSP. CODE ANN. § 545.157(a). Grisham chose to change lanes instead of reducing his speed. Even though changing lanes was one of the options sanctioned by the Move Over Act, making this choice did not obviate Grisham's obligation as a motorist to not move from his lane of traffic unless that movement could be made safely. *See* TEX. TRANSP. CODE ANN. § 545.060(a) ("An operator on a roadway divided into two or more clearly marked lanes for traffic ... may not move from the lane unless that movement can be made safely.") The obstruction in the left lane caused by Cowling's disabled vehicle jeopardized Grisham's ability to move from his lane safely.

We note that the record before us does not contain information regarding Grisham's speed at the time he chose to change lanes. However, an excerpt of Grisham's deposition indicates he said "the traffic was relatively heavy" and "it seemed like there was considerable amount of traffic for that time of night." If the traffic were heavy, it would have been reasonable to have reduced his speed to twenty miles per hour below the speed limit. In the end, Grisham's decision to change lanes and the collision with Cowling's vehicle which followed actually caused his injuries. We conclude that sovereign immunity is not waived. We note that our conclusion is consistent with the Texas Supreme Court's instruction that the TTCA's waiver of sovereign immunity is a limited one. *See Miller,* 51 S.W.3d at 587.

Accordingly, we reverse and render judgment dismissing appellee's claims against TDPS for want of jurisdiction.

---

**2.** The legislative history of the statute indicates its purpose was to reduce incidents of police officers and emergency personnel sustaining injury or being killed in the line of duty. *See* Texas State Senate Realmedia Video Archives, http://www.senate.state.tx.us/avarchive/?yr=2003 & mo=2.