

# Fourth Court of Appeals

## San Antonio, Texas

## OPINION

No. 04-13-00082-CV

**RYDER INTEGRATED LOGISTICS, INC.** and Ryder Integrated Logistics of Texas, LLC,
Appellants

v.

**FAYETTE COUNTY**,
Appellee

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-03779
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:          Catherine Stone, Chief Justice
                  Marialyn Barnard, Justice
                  Luz Elena D. Chapa, Justice

Delivered and Filed: August 30, 2013

AFFIRMED

This is an interlocutory appeal stemming from the trial court's order granting Fayette

County's plea to the jurisdiction. Fayette County's plea to the jurisdiction asserted several grounds

for immunity from suit, but the trial court did not specify which ground its ruling was based upon.

Ryder Integrated Logistics, Inc. and Ryder Integrated Logistics of Tex., LLC (Ryder) appeal the

trial court's order, claiming that Fayette County is not entitled to sovereign immunity or derived

official immunity. Fayette County responds that the trial court correctly ruled in its favor under

either of these immunity theories. Because we conclude that Ryder's suit is barred by sovereign

immunity, we affirm the trial court's order granting the plea to the jurisdiction and dismissing Ryder's claims against Fayette County.[1]

## BACKGROUND

This case concerns a fatal trucking accident that occurred on IH-10 in Fayette County, Texas. Around 3:00 a.m., Fayette County Deputy Sheriff Randy Thumann stopped Ralph Molina for a traffic violation. Molina's truck pulled over on the shoulder of IH-10, and Thumann's patrol car pulled up behind Molina's 18-wheeled truck. After pulling over, Molina's truck began rolling backward toward Thumann's patrol car, so Thumann began reversing his car. Because Molina's truck continued to roll backward, Thumann drove his cruiser out from behind Molina's truck and onto a grassy area to the right.

Thumann wanted to reposition his vehicle behind Molina's truck again, so he turned his patrol vehicle around in the grassy area to the right of the roadway, causing his vehicle to face oncoming traffic. At all relevant times, Thumann's vehicle remained in the grassy area to the right of Molina's truck, which was stopped on the right-side improved shoulder of the highway. Shortly after Thumann turned his vehicle around, Ryder's 18-wheeled truck, driven by Roberto Solis, approached the area where Molina's truck was stopped. While Thumann's vehicle was parallel to Molina's truck in the grassy area but facing oncoming traffic, Solis's truck hit the rear left side of Molina's truck. Solis's truck immediately caught fire, and Solis died in the fire. All of these events were captured by Thumann's dashcam video.[2]

---

[1] Because we conclude Ryder's claim is barred by sovereign immunity, we need not reach Fayette County's alternate claim that Ryder's suit is barred by derived official immunity. As such, we do not need to determine whether the risk/need analysis or the reasonableness analysis is the proper good-faith analysis in this case. *See* TEX. R. APP. P. 47.1.

[2] When a videotape exists and there are no allegations that it has been tampered with, courts should use the video as evidence and "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also City of Dallas v. Hillis*, 308 S.W.3d 526, 533 (Tex. App.—Dallas 2010, pet. denied).

After being sued by Molina, Ryder filed a third-party suit against Fayette County.[3] Ryder alleged that Thumann, an employee of Fayette County, was a contributing cause of the accident because the method he used to reposition his vehicle caused his vehicle's lights to shine into the eyes of oncoming traffic and to distract the approaching drivers, including Solis. Fayette County filed a plea to the jurisdiction, asserting that the suit was barred by governmental immunity, a species of sovereign immunity, and derived official immunity under the Texas Tort Claims Act (TTCA). Ryder did not file a response. The trial court held a hearing on the plea to the jurisdiction, but Ryder did not introduce any evidence. The trial court granted Fayette County's plea to the jurisdiction, and Ryder now appeals that order.

## STANDARD OF REVIEW

A trial court lacks subject-matter jurisdiction when a governmental unit, such as a county, is immune from suit. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). A county is immune from suit unless the state has consented to waive immunity. *Id.* at 542; *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam). A proper method of asserting immunity from suit is in a plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *City Of Kemah v. Vela*, 149 S.W.3d 199, 202 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). The determination of whether a court has subject-matter jurisdiction is a question of law that is reviewed de novo. *Miranda*, 133 S.W.3d at 226; *City of San Antonio v. Estrada*, 219 S.W.3d 28, 31 (Tex. App.—San Antonio 2006, no pet.).

When suing a governmental unit, the plaintiff bears the burden of affirmatively demonstrating the trial court's jurisdiction by alleging a valid waiver of immunity in its pleadings. *Whitley*, 104 S.W.3d at 542. When the governmental unit files a plea to the jurisdiction, we must

---

[3]Solis's heirs were also defendants in the underlying action, and Solis's heirs and Molina's passenger intervened in the third-party petition against Fayette County. Ryder was the only party to appeal in the third-party action.

decide whether the plaintiff has established the trial court's jurisdiction. *Miranda*, 133 S.W.3d at 226. A plea to the jurisdiction can challenge a trial court's jurisdiction in two ways: (1) by contesting whether the pleadings allege facts sufficient to invoke the court's jurisdiction; or (2) by disputing the existence of the jurisdictional facts alleged. *Id.*

When a plea to the jurisdiction challenges the existence of jurisdictional facts, as it does in this case, the trial court must consider relevant evidence presented by the parties to determine whether an issue of fact exists. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam); *Miranda*, 133 S.W.3d at 227. "After a governmental entity presents evidence that the trial court lacks subject[-]matter jurisdiction, the plaintiff must show there is a disputed material fact regarding the jurisdictional issue." *City of Dallas v. Brooks*, 349 S.W.3d 219, 224– 25 (Tex. App.—Dallas 2011, no pet.); *see also Miranda*, 133 S.W.3d at 228. When the evidence creates a fact question as to the court's jurisdiction, the trial court must deny the plea and allow the fact finder to resolve the question. *Hayes*, 327 S.W.3d at 116; *Miranda*, 133 S.W.3d at 228. Conversely, if the evidence is undisputed or fails to raise a fact question about the existence of the court's jurisdiction, the trial court must rule on the plea as a matter of law. *Hayes*, 327 S.W.3d at 116; *Miranda*, 133 S.W.3d at 228. Because this is a de novo review, these rules also guide this court on appeal.

This standard of review generally mirrors review of traditional summary judgments. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009); *Miranda*, 133 S.W.3d at 228. As a result, we assume evidence favorable to the nonmovant to be true, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Heinrich*, 284 S.W.3d at 378; *Miranda*, 133 S.W.3d at 228. Although resolution of the jurisdictional question often becomes intertwined with factual questions on the merits of the plaintiff's claim, the standard discussed above, like that used for summary judgments, seeks to "protect the plaintiff[] from having to 'put

on [its] case simply to establish jurisdiction'" and, instead, requires the plaintiff to establish only that there is a disputed material fact relevant to the issue of jurisdiction. *Miranda*, 133 S.W.3d at 228 (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)); *see also State v. Lueck*, 290 S.W.3d 876, 884 (Tex. 2009) ("[T]he burden of proof with respect to these jurisdictional facts 'does not involve a significant inquiry into the substance of the claims.'" (quoting *Blue*, 34 S.W.3d at 554)).

## SOVEREIGN IMMUNITY

The TTCA waives sovereign immunity in some limited circumstances, thus providing a trial court with jurisdiction to hear those types of suits. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109 (West 2011); *Miranda*, 133 S.W.3d at 224. Unless the TTCA clearly and unambiguously waives immunity, the government will be immune from suit. *Miranda*, 133 S.W.3d at 224–25; *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003). The TTCA waives immunity in three situations where a person suffers injury or death: "use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property." *Miranda*, 133 S.W.3d at 225 (quoting *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002)) (internal quotation marks omitted).

Indeed, the TTCA provides that the government is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

    (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

    (B) the employee would be personally liable to the claimant according to Texas law; and

> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West 2011). In this case, the parties dispute whether Thumann's use or operation of his motorized patrol vehicle resulted in a waiver of immunity under section 101.021(1). *See id.* The Supreme Court of Texas has defined "use" to mean "to put or bring into action or service; to employ for or apply to a given purpose," and "operation" to refer to "doing or performing of a practical work." *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992) (quoting *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989)) (internal quotation marks omitted).

A governmental unit will be liable under section 101.021(1) of the TTCA only if there is a nexus between the operation or use of the motor-driven vehicle and the plaintiff's injuries. *Whitley*, 104 S.W.3d at 543; *LeLeaux*, 835 S.W.2d at 51 ("The phrase 'arises from' requires a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle or piece of equipment."). To satisfy this requirement, "the [vehicle]'s use must have actually caused the injury." *Whitley*, 104 S.W.3d at 543 (alteration in original) (quoting *Texas Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001)) (internal quotation marks omitted). The operation or use of a motor vehicle will not have a sufficient nexus to the plaintiff's injuries "if it does no more than furnish the condition that makes the injury possible." *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). This stringent nexus requirement corresponds with the TTCA's intent that waiver of sovereign immunity be limited. *LeLeaux*, 835 S.W.2d at 51.

During oral argument, Ryder argued that the dispositive issue is whether Thumann was negligent in maneuvering his vehicle. We disagree. We must first make a determination on the legal question of whether there was a nexus, that is, whether Thumann's use or operation of his

vehicle was the cause of Solis's death or whether it merely furnished the condition that made his death possible.

In relation to the nexus requirement, both parties cite *City of Kemah v. Vela* as a similar case that provides guidance, but Ryder argues that its guidance is limited because it is distinguishable from the case at hand. In *City of Kemah*, a police officer pulled over Gabriel Vela for an expired registration sticker. 149 S.W.3d at 201. Vela and the officer stopped their vehicles in a left-turn lane. *Id.* During the course of the stop, the officer realized Vela had an outstanding traffic warrant, so he was arrested and placed in the backseat of the officer's patrol car. *Id.* Another officer arrived at the scene to assist, and he also stopped his vehicle in the left-turn lane behind the first patrol car. *Id.* The emergency lights on both patrol cars were activated. *Id.* Shortly after Vela was placed in the patrol car, a truck ran into the second patrol car, pushing it into the front patrol car where Vela was sitting. *Id.* Vela sued the truck driver and the City of Kemah for injuries he sustained as a result of the collision. *Id.*

On appeal, the court of appeals focused on whether Vela had established that the use of the patrol vehicles actually caused Vela's injuries. The court determined that the vehicles did no more than furnish the condition that made Vela's injuries possible. *Id.* at 204. The court noted that Vela did not complain that placing him in a patrol car was a negligent use of the vehicle, but instead that "the officers acted negligently when they placed him in an improperly parked patrol car." *Id.* Regardless, the court held that the cause of Vela's injuries was the truck driver's collision with the patrol cars, not Vela being seated in the vehicle. *Id.*

Ryder argues that *City of Kemah* is distinguishable because, unlike the officers in *City of Kemah*, Thumann was actively using his cruiser at the time his lights allegedly shined into Solis's eyes and distracted him. Ryder argues that this distraction to oncoming traffic was a contributing cause to the accident in this case. Assuming Solis was distracted by the patrol car's lights, the

claim of distraction seems to be more properly classified as a condition that made the accident possible than as the actual cause of the accident itself.

Ryder also cites *Junemann v. Harris County* and *City of San Antonio v. Johnson* in support of its position. *Junemann* involves an officer's failure to use his overhead emergency patrol lights while stopped and rendering assistance. *Junemann*, however, is distinguishable from the case at issue because it was based on "the theory of use or misuse of non-defective tangible personal property" under section 101.021(2), instead of being based on the use or operation of a motor-driven vehicle under section 101.021(1). 84 S.W.3d 689, 695 (Tex. App.—Dallas 2002, pet. denied). Under section 101.021(2), a plaintiff can establish a waiver of sovereign immunity by establishing the "use or misuse of the property was a contributing factor to the alleged harm." *Id.* Ryder did not plead waiver of immunity under this theory in its third-party petition in the trial court, nor has Ryder made this argument on appeal. Thus, *Junemann* is inapplicable to the case at hand.

In *City of San Antonio v. Johnson*, Bonnie Partlett was rear-ended by two motorists after Partlett slowed her vehicle to a stop when a police car in front of her slowed to make a u-turn. 103 S.W.3d 639, 641 (Tex. App.—San Antonio 2003, pet. denied). Partlett sued the two motorists who rear-ended her vehicle, Johnson and Thornton. Johnson and Thornton then filed a third-party claim against the City for contribution. *Id.* In response, the City filed a plea to the jurisdiction alleging, among other things, that a claim for contribution was barred by the TTCA. *Id.* This court determined that a contribution claim was not barred so long as the City would not be immune from a claim made by the underlying plaintiff, Partlett. *Id.* at 642. With limited discussion, this court held that the claim for contribution was not barred because Partlett's injuries arose "from an automobile accident possibly caused by an improper u-turn made by the City's police officer." *Id.*

As a result, the court concluded, "Partlett's injuries were potentially caused by the officer's operation or use of a motor-driven vehicle—a claim for which immunity is waived." *Id.*

At first glance, *Johnson* may seem similar to the case at hand; however, we conclude that it is factually distinguishable. The officer in *Johnson* apparently made an improper, and possibly illegal u-turn on the roadway where vehicles were traveling. In comparison, Officer Thumann was at all times off of the road in the grassy area, and Molina was stopped on the improved shoulder, completely out of the lanes of travel. For the foregoing reasons, we are not persuaded by the authority presented by Ryder.

In addition to *City of Kemah*, Fayette County cites *Texas Department of Public Safety v. Grisham* and *City of Dallas v. Hillis* to support its position that immunity is not waived. Fayette County cites these cases in an effort to demonstrate that Ryder has not established a sufficient nexus between Thumann's actions in relocating his vehicle and Solis's death. Specifically, Fayette County argues that Thumann's use of his vehicle in the grassy area to the right of the highway "was too attenuated in the 'use–causation' analysis for Thumann's conduct to have actually been the cause of the injury in question." Fayette County also asserts that Solis's death was caused by his decision not to switch lanes pursuant to the "Move Over Act." *See* TEX. TRANSP. CODE ANN. § 545.157 (requiring vehicles passing an emergency vehicle to switch lanes or slow down).[4]

In *Texas Department of Public Safety v. Grisham*, an accident occurred in the left lane of traffic, but the responding officer's patrol car was parked on the right shoulder of the highway. 232 S.W.3d 822, 824 (Tex. App.—Houston [14th Dist.] 2007, no pet.). As the plaintiff approached the scene he noticed the patrol car with its overheard emergency lights activated on the shoulder of the right lane, so the plaintiff moved into the left lane. *Id.* Shortly after switching lanes, the

---

[4] Because we conclude there was not a sufficient nexus between Thumann's use of his vehicle and Solis's death, we need not reach the issue of whether Solis had any possible obligations under the Move Over Act.

plaintiff collided with a disabled vehicle in the left lane. *Id.* In his pleadings, the plaintiff alleged that the officer "used or misused [his patrol car] and overhead emergency lights in a manner that funneled [the plaintiff] directly into the disabled vehicle" because the officer should have expected that passersby would change lanes pursuant to the Move Over Act. *Id.* at 825 (citing TEX. TRANSP. CODE ANN. § 545.157(a) (West Supp. 2006)).

Although this allegation could be read as making a claim involving misuse of tangible personal property under section 101.021(2), the court of appeals analyzed the case under section 101.021(1) and the associated case law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. Similar to the court in *City of Kemah*, the *Grisham* court focused on the nexus requirement for causation. *See Grisham*, 232 S.W.3d at 826–27. The court concluded that it was the plaintiff's decision to change lanes, instead of slowing down, that caused the collision and the plaintiff's injuries. *Id.* at 827. The court went on to explain that the patrol car being parked on the right shoulder with its lights activated did nothing more than furnish the condition that made the plaintiff's injuries possible. *Id.*

In *City of Dallas v. Hillis*, the decedent's survivors sued the City of Dallas regarding a single-vehicle accident that occurred after the decedent lost control of his motorcycle on an exit ramp during a high-speed chase by a police officer. 308 S.W.3d 526, 528–29 (Tex. App.—Dallas 2010, pet. denied). The survivors based their suit against the City on multiple theories of negligence, including the officer's failure to follow the department's "no-chase policy." *Id.* at 529. The City filed a plea to the jurisdiction based on section 101.021(1)(A) of the TTCA, specifically asserting that the decedent's death did not arise from the officer's use of his motor vehicle. *Id.* at 532. After reviewing case law indicating that an injured person's own decisions can break the chain of causation, the court of appeals concluded "that the only actual cause of [the decedent]'s accident was his own decision to attempt to exit . . . at a reckless rate of speed." *Id.* at 534.

Although all of the cases cited above are helpful, *Grisham* is the most instructive to this case. The core of the complaint in *Grisham* is that the officer's overhead emergency lights caused the plaintiff to take the action (switching lanes) that resulted in the accident. This can be compared to the complaint by Ryder that Thumann's lights caused Solis to become distracted or blinded and, ultimately, collide with Molina's truck.

Ryder suggests that the necessary nexus is established because the patrol car was in active use, i.e. moving at the time of the accident. We do not agree that the mere fact that the patrol car was moving when the accident occurred is determinative. That is especially the case when the focus of Ryder's complaint is on the distracting nature of the vehicle's lights, which could presumably be illuminated even when the vehicle was not in motion.

We likewise reject Fayette County's contention that a nexus is established only when the motor-driven vehicle is a "contact" or "near-contact" vehicle. This court is not inclined to adopt such a bright-line test. Nor is there a need to apply such a test in this case. Under the existing case law and due to the limited waiver of sovereign immunity, we conclude Thumann's use of his vehicle when turning around merely furnished the condition that made Solis's death possible.

## CONCLUSION

We conclude that Ryder failed to meet its heavy burden to establish a nexus between Thumann's use of his vehicle while turning around in the grassy around beside the highway and Solis's death. Accordingly, we affirm the trial court's order granting Fayette County's plea to the jurisdiction on the basis of sovereign immunity.

Catherine Stone, Chief Justice