

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-19-00220-CV

**THE CITY OF SAN ANTONIO**,
Appellant

v.

Armando D. **RIOJAS**,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CI13534
Honorable David A. Canales, Judge Presiding

Opinion by:    Beth Watkins, Justice
Dissenting Opinion by: Luz Elena D. Chapa, Justice

Sitting:    Rebeca C. Martinez, Justice
            Luz Elena D. Chapa, Justice
            Beth Watkins, Justice

Delivered and Filed: February 26, 2020

AFFIRMED

The City of San Antonio appeals an order denying its plea to the jurisdiction. The City

argues the trial court erred in denying its plea because it is immune from appellee Armando D.

Riojas's claims that he suffered injuries arising from San Antonio Police Department Officer

Vincent Tristan's operation or use of his patrol vehicle. We affirm the trial court's order.

### BACKGROUND

On the afternoon of February 17, 2017, Officer Tristan was driving his patrol vehicle on

Interstate Highway 37 South. The stretch of highway where Officer Tristan was driving consists

of three main lanes for southbound traffic and a fourth exit lane on the right side of the highway. In his affidavit, Officer Tristan stated that as he moved into the exit lane, traffic seemed to be slowing for no obvious reason, so he activated his vehicle's emergency lights. This caused the vehicle's camera to begin recording, and the resulting video starts approximately 30 seconds before Officer Tristan turned on his lights. Officer Tristan's microphone was activated shortly thereafter. It is undisputed that Officer Tristan was driving his vehicle when he activated his lights.

Officer Tristan's affidavit states that "[a]bout the time [he] turned on [his] lights," he saw a white car driven by Jolean Olvedo "crossing several lanes of traffic in an attempt to exit." The police report does not include this detail, but the video shows Olvedo moving into the far-right main lane and braking for unknown reasons. The video also shows another car next to Olvedo—which was also white—merging into her lane, cutting her off, and briefly stopping before driving away. Olvedo then suddenly crossed two solid white lines separating the exit lane from the three main lanes and exited the highway. This abrupt exit is the first act by Olvedo noted in the police report. Olvedo told SAPD officers that she exited suddenly because the driver of the other white car cut her off. Officer Tristan concluded, however, that Olvedo "made an improper lane change and impeded traffic behind her," so after Olvedo exited, Officer Tristan radioed a nearby officer to pull her over and ticket her.

While Officer Tristan was watching Olvedo in the right lane, Riojas was driving his motorcycle in the far-left lane directly behind a car driven by Klaryssa Vela. Riojas and Vela were behind Officer Tristan. Riojas saw Vela braking, so he took evasive action to avoid hitting her. He then lost control of his motorcycle, fell off, and came to rest near a concrete barrier. Meanwhile, his motorcycle slid and hit the back of Vela's car. Officer Tristan saw Riojas's motorcycle sliding without a rider, and at the 00:57 mark of the video—approximately twenty-seven seconds after he activated his lights—he can be heard telling the dispatcher, "I'll be out here with a major,

motorcycle involved on 37." He then maneuvered his vehicle from the right side of the highway, where he had previously stopped after he turned on his lights, onto the left side of the highway where Riojas was located. In the video, Officer Tristan can be heard remarking as he drove toward Riojas that a white car that "stopped right in the middle of the freeway"—presumably Olvedo or the other white car that cut her off—"is the one that caused this accident."

In addition to Officer Tristan, three other people—Vela and two unidentified men—stopped to help Riojas. The unidentified men ("the eyewitnesses") approached Officer Tristan and told him they believed the wreck was his fault. One eyewitness said, "You scared everybody on the street by turning the [emergency] lights on for no reason." Officer Tristan again remarked, "That white car stopped in the middle of the freeway," and told the eyewitnesses, "Don't be saying that it was my fault." One of the eyewitnesses responded, "I'm just saying, what you did caused this." Officer Tristan then stated, "I saw the bike sliding, that's when I turned my lights on." Officer Tristan's police report documents the eyewitnesses' statements, but it does not repeat his statement that he turned his lights on because he saw Riojas's wreck. Instead, it recites that Officer Tristan saw Riojas's motorcycle "without a rider sliding sideways" *after* he turned on his lights.

Officer Tristan asked Vela whether she slowed down because of his emergency lights, and she told him that she slowed because the car in front of her did. The driver of the vehicle in front of Vela left the scene, has not been identified, and has not provided any evidence in this case. In his deposition, Riojas testified that he did not see Officer Tristan's lights until after he fell off his motorcycle. Because both Vela and Riojas were behind Officer Tristan when he activated his vehicle's lights and camera, the video does not show Vela braking, the steps Riojas took to try to avoid hitting Vela, or Riojas's fall from his motorcycle.

Riojas sued the City for his injuries. He later amended his petition to add both Olvedo and the owner of the car she had been driving as defendants. The City filed a plea to the jurisdiction,

which argued that the City was immune from Riojas's claims because: (1) the wreck was not caused by Officer Tristan's activation of his emergency lights and therefore did not arise from the operation or use of a motor-driven vehicle; and (2) Officer Tristan performed a discretionary duty in good faith and was therefore entitled to official immunity. The trial court denied the City's plea to the jurisdiction, and this interlocutory appeal followed.

## ANALYSIS

### *Standard of Review*

"A plea to the jurisdiction is a dilatory plea that defeats a cause of action whether the claims have merit or not." *Am. K-9 Detection Servs., LLC v. Freeman*, 556 S.W.3d 246, 267 (Tex. 2018). This court reviews a trial court's ruling on a plea to the jurisdiction de novo. *San Antonio Water Sys. v. Smith*, 451 S.W.3d 442, 445 (Tex. App.—San Antonio 2014, no pet.). When a plea to the jurisdiction challenges the pleadings, we must determine "if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in the plaintiff's favor. *Id.* If the pleaded facts do not affirmatively demonstrate the trial court's jurisdiction but also do not reveal incurable jurisdictional defects, the plaintiff should be allowed to amend. *Id.* However, if the pleadings affirmatively negate the existence of jurisdiction, then the plea may be granted and the suit dismissed without allowing the plaintiffs an opportunity to amend. *Id.*

When a plea to the jurisdiction challenges the existence of jurisdictional facts, our review mirrors that of a traditional summary judgment. *Am. K-9*, 556 S.W.3d at 267. Where the jurisdictional issue implicates the merits of the parties' claims, "we consider relevant evidence submitted by the parties to determine if a fact issue exists." *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632–33 (Tex. 2015). "We take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor." *Id.* If the evidence is

undisputed or does not raise a fact question, the trial court rules on the plea as a matter of law. *Am. K-9*, 556 S.W.3d at 267. However, if the evidence raises a fact question on the jurisdictional issue, "then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Miranda*, 133 S.W.3d at 228.

### *"[A]rises from the Operation or Use of a Motor-Driven Vehicle"*

The City first argues that the trial court erred in denying its plea to the jurisdiction because there is no evidence that Riojas's injuries arose from Officer Tristan's operation or use of his patrol vehicle. In support of this position, it argues: (1) the eyewitness testimony upon which Riojas relies to create a fact issue is speculative and conclusory; (2) Officer Tristan's operation or use of his patrol vehicle merely created a condition that made the wreck possible; and (3) Officer Tristan's operation or use of his patrol vehicle was too attenuated from the wreck to have caused it.

### *Applicable Law*

"Under the common law, municipalities like the City of [San Antonio] are immune from suit and liability for damages arising from the performance of governmental functions absent a clear and unambiguous legislative waiver of immunity." *Worsdale v. City of Killeen*, 578 S.W.3d 57, 62 (Tex. 2019). The Texas Tort Claims Act ("TTCA") lists police protection as a governmental function. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(1). The TTCA provides a limited waiver of liability for, inter alia, personal injury caused by the negligence of a governmental employee acting within the scope of employment if the injury "arises from the operation or use of a motor-driven vehicle" and "the employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1). The TTCA does not define "arises from," but the Texas Supreme Court has held that an injury arises from a governmental employee's negligence if the plaintiff shows a "nexus between the operation or use of the motor-driven vehicle or equipment and [the] plaintiff's injuries." *Dall. Area Rapid Transit v. Whitley*,

104 S.W.3d 540, 543 (Tex. 2003). The supreme court has "described the threshold as something more than actual cause but less than proximate cause." *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 928–29 (Tex. 2015). "'[A]rise out of' means . . . there is but[-]for causation, though not necessarily direct or proximate causation." *Id.* at 929 (internal quotation marks omitted). The necessary causal nexus requires a showing that the use of the vehicle actually caused the injury. *Whitley*, 104 S.W.3d at 543. However, the use of a vehicle "does not cause injury if it does no more than furnish the condition that made the injury possible." *Id.* A plaintiff must show "negligent or otherwise improper use of a motor-driven vehicle." *Ryder*, 453 S.W.3d at 928.

*Application*

1.      *The City's challenges to the eyewitnesses' statements*

The City argues that "Riojas offered nothing to raise a fact issue that anything Officer Tristan did caused Klaryssa Vela or the motorist in front of her to brake." However, the City itself introduced a police report and a video containing the two eyewitnesses' opinions that Officer Tristan caused the wreck by activating his emergency lights. The City contends these opinions are speculative and conclusory and therefore amount to no evidence.

An opinion is speculative when it is based on guesswork or conjecture. *Nat. Gas Pipeline Co. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012); *Rife v. Kerr*, 513 S.W.3d 601, 615 (Tex. App.—San Antonio 2016, pet. denied). An opinion is not speculative if it is rationally based on an eyewitness's perception. *In re Molina*, 575 S.W.3d 76, 81–82 (Tex. App.—Dallas 2019, orig. proceeding); *see also* TEX. R. EVID. 701(a). "The requirement that an opinion be rationally based on the perceptions of the witness is composed of two parts: (1) the witness must establish personal knowledge of the events from which his opinion is drawn; and (2) the opinion drawn must be rationally based on that knowledge." *Dodson v. Munoz*, No. 04-17-00409-CV, 2018 WL 3747748, at *6 (Tex. App.—San Antonio Aug. 8, 2018, no pet.) (mem. op.) (internal quotation marks

omitted). An opinion satisfies the personal knowledge requirement "'if it is an interpretation of the witness's objective perception of events,'" and it is rationally based on the witness's personal knowledge "'if a reasonable person could draw that opinion under the circumstances.'" *Id.* (quoting *Merrill v. Sprint Waste Servs. LP*, 527 S.W.3d 663, 670 (Tex. App.—Houston [14th Dist.] 2017, no pet.)); *see also Health Care Serv. Corp. v. E. Tex. Med. Ctr.*, 495 S.W.3d 333, 339 (Tex. App.—Tyler 2016, no pet.) ("'Rationally based' means that the opinion must be one that a person could normally form from observed facts.").

Here, it is undisputed that the eyewitnesses were physically present on Interstate Highway 37 in the moments leading up to the wreck and immediately afterward. Although Riojas and Vela stated they did not see Officer Tristan's lights before the wreck, the video shows that the eyewitnesses, in contrast, did claim to have personally witnessed the activation of Officer Tristan's emergency lights before the wreck. This is some evidence that the eyewitnesses personally observed the traffic conditions in the moments leading up to the activation of Officer Tristan's emergency lights. Based on their perception of those conditions, they concluded that there was "no reason" for Officer Tristan to have turned on his lights. *See Dodson*, 2018 WL 3747748, at *6. It can also reasonably be inferred that the eyewitnesses observed the contemporaneous reaction of their fellow motorists to this unexpected—and, in their view, unwarranted—display of emergency lights. *See id.* It was rational for them to conclude that Officer Tristan "scared everybody on the street"—including themselves—and, by doing so, caused Riojas's wreck. *See id.*; *see also Molina*, 575 S.W.3d at 81–82. As a result, we conclude that the eyewitnesses' opinions were not speculative.

For similar reasons, we conclude that the eyewitnesses' opinions were not conclusory. A lay witness's opinion is conclusory if it "does not provide the underlying facts to support the conclusion." *Neal v. Machaud*, No. 04-06-00037-CV, 2006 WL 3612867, at *3 (Tex. App.—San

Antonio Dec. 13, 2006, no pet.) (mem. op.); *see also Justiss*, 397 S.W.3d at 156 (opinion is conclusory if it "state[s] a conclusion without any explanation") (internal quotation marks omitted). Additionally, "[c]onclusory statements are not susceptible to being readily controverted." *In re S.N., Jr.*, Nos. 05-16-01010-CV, 05-16-01033-CV, 05-16-01034-CV, 05-16-01035-CV, 2017 WL 343599, at *3 (Tex. App.—Dallas Jan. 18, 2017, pet. denied) (mem. op.).

As noted above, the eyewitnesses based their opinions about Officer Tristan's fault on their perceptions that there was "no reason" for Officer Tristan to activate his lights and that he "scared everybody on the street" by doing so. *See Dodson*, 2018 WL 3747748, at 6–7; *see also Molina*, 575 S.W.3d at 81–82. Additionally, by relying on Vela's conflicting statements to challenge those opinions, the City has demonstrated that the opinions are susceptible to being readily controverted. *See In re S.N.*, 2017 WL 343599, at *3; *see also Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989). Because these opinions are rationally based on the eyewitnesses' perception of the underlying facts and are susceptible to being readily controverted, they are not conclusory. *See Dodson*, 2018 WL 3747748, at 6–7; *In re S.N.*, 2017 WL 343599, at *3.

At most, the City's complaints about the eyewitnesses' statements go to the weight and credibility to be given to that evidence. *Cf. Keo v. Vu*, 76 S.W.3d 725, 734 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ("[F]actual weaknesses underlying an expert's causation opinion generally go to the testimony's weight . . . the opinion is no evidence only if based *completely* upon speculation and surmise.") (emphasis in original); *see also Wal-Mart Stores, Inc. v. Garcia*, 974 S.W.2d 83, 87 (Tex. App.—San Antonio 1998, no pet.). Decisions about whether to credit a witness's opinion and the weight to give to that opinion are reserved for the factfinder. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). While Vela and Riojas stated that they personally did not see Officer Tristan's lights before the wreck, we conclude that a reasonable factfinder could believe the eyewitnesses' assertion that the other drivers on Interstate Highway

37 were "scared" by Officer Tristan's activation of his lights before Riojas fell from his motorcycle, even if Vela and Riojas personally were not. As a result, under the applicable summary judgment standard, any conflict between Vela's and Riojas's statements and the eyewitnesses' perception cannot be resolved as a matter of law on a jurisdictional plea. *See id.*; *see also Bandera County v. Hollingsworth*, 419 S.W.3d 639, 643 (Tex. App.—San Antonio 2013, no pet.). Because we must view the evidence in the light most favorable to Riojas and indulge every reasonable inference in his favor, we hold that the trial court did not err by concluding the eyewitnesses' opinions presented more than a scintilla of evidence that this wreck would not have occurred but for Officer Tristan unexpectedly and inexplicably activating his emergency lights. We therefore overrule this challenge to the trial court's order.

2.      *The City's argument that Officer Tristan's use of his vehicle was merely a condition that made the wreck possible*

The City also argues that even if Officer Tristan's use of his lights played a role in the wreck, that conduct merely created a condition that made the wreck possible. In *Ryder*, we applied a similar analysis and concluded that the plaintiff's claim that other drivers were distracted by a sheriff's deputy's headlights "seems to be more properly classified as a condition that made the accident possible than as the actual cause of the accident itself." *Ryder Integrated Logistics, Inc. v. Fayette County*, 414 S.W.3d 864, 869 (Tex. App.—San Antonio 2013, pet. granted), *rev'd*, 453 S.W.3d 922 (Tex. 2015). However, the supreme court rejected that conclusion because it was undisputed that the deputy "was driving—and thus operating—his vehicle at the time the accident occurred." *Ryder*, 453 S.W.3d at 930. The supreme court concluded that the plaintiff had therefore "alleged an injury arising from the tortious operation or use of a vehicle." *Id.* Here, just like in *Ryder*, it is undisputed that Officer Tristan was driving his vehicle when he turned on his emergency lights and at the moment of Riojas's wreck. *See id.* In other words, by arguing that

Officer Tristan's conduct merely created a condition that made the wreck possible, the City has asked us to reach the same conclusion the supreme court rejected in *Ryder*. *See id.* We decline to do so.

A situation where conduct "merely furnish[es] a condition that made the accident possible . . . generally arises when the forces that a person's negligence has set into motion have come to rest and then some new catalyst causes an injury." *Molina*, 575 S.W.3d at 82. In *Grisham*, a case upon which the City heavily relies—and which we relied on in *Ryder* for the proposition the supreme court rejected—the plaintiffs were injured in a wreck that occurred when they switched lanes after seeing a state trooper's emergency lights. *See Tex. Dep't of Pub. Safety v. Grisham*, 232 S.W.3d 822, 826 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see also Ryder*, 453 S.W.3d at 930. The trooper activated his lights because a parked car was blocking the left lane of traffic, but unbeknownst to the plaintiffs, he had positioned his cruiser on the opposite side of the highway. *Grisham*, 232 S.W.3d at 826. When the plaintiffs changed lanes to move away from the cruiser, they hit the parked car. *Id.* at 824. Both the trooper's lights and the positions of the two stopped vehicles were conditions that already existed at the scene before the plaintiffs arrived. *See id.* Under those facts, the Fourteenth Court of Appeals held that the trooper's use of his emergency lights and his positioning of the cruiser "did not actually cause the injury," but "merely furnished the condition that made [the] injury possible" because the plaintiffs could have reduced their speed in response to the emergency lights instead of changing lanes. *Id.* at 827.

Here, in contrast, there is some evidence that Riojas's wreck occurred contemporaneously or nearly contemporaneously with Officer Tristan's activation of his lights,[1] under circumstances

---

[1] The dissent contends that "[n]o evidence in the record supports this leap." However, at the 00:57 mark of the video—approximately twenty-seven seconds after Officer Tristan activated his lights—Officer Tristan acknowledges a "major, motorcycle involved" wreck "on 37." By that time, Officer Tristan had pulled onto the shoulder and begun to move his patrol vehicle toward Riojas's wreck.

that made two eyewitnesses independently conclude that Officer Tristan's operation or use of his vehicle triggered the wreck. *See Molina*, 575 S.W.3d at 82 ("Here, according to [an eyewitness's] testimony, [the tortfeasor's] conduct almost immediately caused the traffic accident."). For that reason, *Grisham* is distinguishable and does not support the City's argument that Officer Tristan's operation or use of his patrol vehicle merely created a condition that made Riojas's wreck possible. *See id.* Because we hold that the trial court did not err by concluding that the City failed to prove as a matter of law that Officer Tristan's operation or use of his vehicle merely furnished a condition that made the wreck possible, we overrule this challenge to the order denying the City's plea to the jurisdiction.

3.    *The City's argument that Officer Tristan's conduct was too attenuated from the wreck to have caused it*

Finally, the City argues that because Riojas's wreck occurred "three lanes away" from Officer Tristan's patrol vehicle, and because Riojas's motorcycle did not strike Officer Tristan's vehicle, the wreck was too geographically and temporally removed from Officer Tristan's activation of his emergency lights to have arisen from that action. The City premises this argument on its claims that "[n]o vehicle in the far-left lane was required to brake in response to anything Officer Tristan did in the far-right exit lane" and "[n]othing Officer Tristan is alleged to have done immediately impacted on Riojas, on Vela, or on the motorist preceding Vela[.]" The City ignores, however, that the Texas Transportation Code explicitly provides that when a police vehicle activates its emergency lights, other drivers must "yield the right-of-way" to the police vehicle, immediately move as close as possible to the right-hand side of the road, and "stop and remain standing" until after the police vehicle has passed. TEX. TRANSP. CODE ANN. § 545.156(a). The statute does not limit this mandatory duty to any specific lane of travel or proximity to the police

vehicle. *Id.* As a result, the claim upon which the City premises its "attenuation" argument is incorrect as a matter of law. *See id.*

Moreover, although section 545.156(a) requires drivers to "stop and remain standing" until a police vehicle displaying its emergency lights drives away, the submitted evidence indicates that Officer Tristan did not drive away from the scene after activating his lights. Instead, he pulled into the space between the exit lane and the main lanes with his lights flashing, and at least two eyewitnesses saw no discernible reason for his having activated his lights in the first place. Based on the interplay between these facts and section 545.156(a)'s mandatory duties, a factfinder could reasonably infer that when Officer Tristan activated his lights and stopped on the right side of the road, his fellow motorists on Interstate Highway 37 were uncertain—or, as the eyewitnesses put it, "scared"—about how to correctly respond. *See id.* Indeed, the video shows that traffic briefly stopped moving altogether—including in the far-left lane—after Officer Tristan pulled over to the right side of the road. The City therefore has not shown as a matter of law that "[n]o vehicle in the far-left lane was required to brake in response to anything Officer Tristan did in the far-right exit lane."[2]

Additionally, the supreme court has recently clarified that the statutory "arises from" requirement is broader than some courts and parties had previously interpreted it. *See PHI, Inc. v. Tex. Juvenile Justice Dep't*, No. 18-0099, 2019 WL 1873431, at *5 (Tex. Apr. 26, 2019). In *PHI*, a governmental employee, Webb, parked a vehicle on an incline, turned it off, and left without applying its emergency brake. *Id.* at *1. After Webb walked away, the vehicle rolled backwards

---

[2] Although the dissent posits that Riojas and Vela did not see Officer Tristan's lights and therefore "were not taking any actions required by the Texas Transportation Code in response to those lights," the car in front of Vela was also traveling in the far-left lane. While the fact that Riojas and Vela did not see Officer Tristan activate his lights before the wreck may, ultimately, convince the factfinder that Officer Tristan's actions did not cause Riojas's injuries, we cannot credit that evidence and ignore the contrary evidence from the eyewitnesses under our summary judgment standards. *See Millspaugh v. Bulverde Spring Branch Emergency Servs.*, 559 S.W.3d 613, 622 (Tex. App.—San Antonio 2018, no pet.).

into PHI's helicopter. *Id.* Based on *Ryder*'s statement that "'a government employee must have been actively operating the vehicle at the time of the incident,'" Webb's employer argued that PHI's negligence claims were barred because Webb was not even in the vehicle, much less actively operating it, when the wreck occurred. *Id.* at *5–6 (quoting *Ryder*, 453 S.W.3d at 927). The supreme court disagreed, holding that even though Webb was not in the vehicle at the moment of impact, the evidence raised a fact question about whether his failure to use the emergency brake "led directly to the damages PHI sustained." *Id.* at *5. The same conclusion is required here, where two eyewitnesses who observed the temporal and geographic conditions surrounding Officer Tristan's activation of his lights and Riojas's wreck both concluded that Officer Tristan's operation of his patrol vehicle was "directly, causally linked to the accident and the damages sustained." *See id.* Based on this evidence, the trial court did not err by rejecting the City's contention that "[n]othing Officer Tristan is alleged to have done immediately impacted on Riojas" or the drivers immediately in front of him.

The dissent agrees with the City's attenuation analysis and concludes that "the evidence establishes that Riojas's injuries arose from actions taken by other drivers that occurred prior to Officer Tristan's activating his emergency lights." However, this conclusion assumes that as a matter of law, the existence of one traffic hazard—the slowdown caused by Olvedo and the driver of the other white car who cut her off—precludes a factfinder from determining that Officer Tristan caused an additional hazard by negligently activating his emergency lights. Such a conclusion is contrary to the City's own pleadings, which allege that "another third party" committed negligent acts that were "a proximate cause, contributing cause or sole cause of the occurrence" and which seek "proportionate reductions in liability pursuant to Chapter 33 of the Texas Civil Practice and Remedies Code." Because nothing in the TTCA required Riojas to show that Officer Tristan's

actions were the sole proximate cause of this wreck to defeat the City's plea to the jurisdiction, we cannot agree with the dissent's analysis on this point.

Finally, the City argues, and the dissent agrees, that the City was entitled to a jurisdictional dismissal because there is no evidence showing why the driver in front of Vela braked. As explained above, the eyewitnesses' statements are circumstantial evidence upon which a factfinder could conclude that the driver in front of Vela braked because Officer Tristan activated his lights. By rejecting this circumstantial evidence, the City essentially asks us to hold that Riojas was required to produce *direct* evidence of the reasons for the unknown driver's actions in order to survive the City's plea to the jurisdiction. However, even during a trial on the merits, causation may be shown by either direct or circumstantial evidence. *See Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 459 (Tex. 1992). Because the direct evidence the City insists was necessary here would not be required for Riojas to prevail at trial, we cannot agree that it was required to defeat the City's jurisdictional plea. *See, e.g.*, *Tex. Dep't of Criminal Justice v. Simon*, 140 S.W.3d 338, 348 (Tex. 2004), *superseded in part on other grounds by* TEX. GOV'T CODE ANN. § 311.034 ("There will, of course, be times when subjective awareness must be proved, if at all, by circumstantial evidence."); *Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002) (noting state of mind "must usually . . . be proved by circumstantial evidence"); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994) (recognizing "the practical difficulty of producing direct evidence" of why a party did what it did).

For these reasons, the trial court did not err by rejecting the City's contention that the wreck was too attenuated from Officer Tristan's conduct to have been caused by it. Accordingly, we overrule this challenge to the trial court's order denying the City's plea to the jurisdiction.

### *Official Immunity*

The City also argues that it is immune from Riojas's claims because Officer Tristan is entitled to official immunity. Riojas responds that the trial court did not err by denying the City's plea on official immunity grounds because the City did not show that Officer Tristan acted in good faith.

### *Applicable Law*

"A governmental employee is entitled to official immunity for the good-faith performance of discretionary duties within the scope of the employee's authority." *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 642–43 (Tex. 2015). A police officer acts in good faith if a reasonably prudent officer under the same or similar circumstances could have believed the need to take the action in question outweighed the risk of harm the action posed to the public. *See Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997). Accordingly, "good faith depends on how a reasonably prudent officer could have assessed both the *need* to which an officer responds and the *risks* of the officer's course of action, based on the officer's perception of the facts at the time of the event." *Id.* at 467 (emphasis in original); *see also Univ. of Hous. v. Clark*, 38 S.W.3d 578, 581 (Tex. 2000) (noting "testimony on good faith must discuss what a reasonable officer could have believed under the circumstances, and must be substantiated with facts showing that the officer assessed both the need to apprehend the suspect and the risk of harm to the public").

"The 'need' aspect of the test refers to the urgency of the circumstances requiring police intervention." *Wadewitz*, 951 S.W.2d at 467. Factors to considering in analyzing the "need" prong include the seriousness of the situation, whether the officer's action is necessary to prevent injury or death, and whether any alternative actions could achieve a comparable result. *Id.* The "risk" prong considers public safety concerns such as the nature and severity of potential harm from the officer's actions, the likelihood of harm occurring, and "whether any risk of harm would be clear

to a reasonably prudent officer." *Id.* Although an officer can rely on his own affidavit to show good faith, the affidavit must address both the "need" and "risk" prongs. *Id.*; *Harless v. Niles*, 100 S.W.3d 390, 399–400 (Tex. App.—San Antonio 2002, no pet.).

### *Application*

Because Riojas has not disputed that Officer Tristan acted within the scope of his authority or that his actions were discretionary, the only question for us to consider is whether the City conclusively showed that Officer Tristan acted in good faith. *See Wadewitz*, 951 S.W.2d at 466; *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). The governmental entity initially "carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction."[3] *Garcia*, 372 SW3d at 635. The City has not satisfied that burden here. *See Harless*, 100 S.W.3d at 399–400. In his affidavit, Officer Tristan stated that when he observed an unexpected traffic slowdown on the day of the wreck, "it was within [his] discretion to decide upon the best course of action to take for the safety of other motorists on I.H. 37 South." However, he did not make any attempt to support that conclusion by showing that he balanced the need he perceived with the potential risk posed by his chosen course of action. *See id.* at 398–99. Without that analysis, his affidavit amounted to nothing more than a "[s]imple subjective pronouncement of good faith" that was "insufficient as a matter of law to meet [the City's] burden." *Id.* at 398.

The City argues that "the needs-versus-risks analysis does not apply in this context" because this case does not involve a high-speed pursuit or an emergency response. However, we have found no authority to support the City's assertion that a needs-risk analysis is only appropriate

---

[3] In its briefing, the City argues that Riojas did not challenge its evidence of good faith in the trial court. However, because we review a trial court's ruling under the same standards that would apply to a summary judgment, Riojas did not have any burden to produce contrary evidence unless and until the City showed it was entitled to judgment as a matter of law on this issue. *See Mission*, 372 S.W.3d at 635.

in those limited situations. To the contrary, as Riojas notes, at least one of our sister courts has required evidence to perform a needs-risk balancing under facts like these. *See Junemann v. Harris County*, 84 S.W.3d 689, 694–95 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

For these reasons, the trial court did not err by denying the City's plea to the jurisdiction on the basis of official immunity. We overrule this challenge to the trial court's order denying the City's plea to the jurisdiction.

### Judicial Admission

Finally, the City argues Riojas judicially admitted that Olvedo's conduct, not Officer Tristan's, caused the wreck. "Assertions of fact, not pleaded in the alternative, in the live pleadings of a party are regarded as formal judicial admissions." *United Parcel Serv., Inc. v. Rankin*, 468 S.W.3d 609, 626 (Tex. App.—San Antonio 2015, pet. denied). It is well-established, however, that "a judicial admission must be clear, deliberate, and unequivocal." *Id.* (internal quotation marks omitted). Here, it is undisputed that Riojas sued the City before he sued Olvedo. The City has not explained why Riojas's allegations against a newly added defendant constitute clear, deliberate, and unequivocal admissions that essentially amount to an abandonment of his original claims against the City. *See id.*

Moreover, "[i]t has long been the law in this state that a defendant's act or omission need not be the sole cause of an injury, as long as it is a substantial factor in bringing about the injury. There may be more than one proximate cause of an injury." *Bustamante v. Ponte*, 529 S.W.3d 447, 457 (Tex. 2017) (internal citations omitted). As the City itself notes, "[a]lthough Riojas pled that he was reacting to a slowdown initiated by [Olvedo], he also asserted that his evasive action resulted from Officer [Tristan]'s actions." These allegations of two possible causes for this wreck do not constitute a clear, deliberate, and unequivocal admission that Olvedo's conduct was the sole

cause of Riojas's injuries. *See Rankin*, 468 S.W.3d at 626. Accordingly, we overrule this challenge to the trial court's order.

CONCLUSION

We affirm the trial court's order.

Beth Watkins, Justice