COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  | § |  |
| --- | --- | --- |
| THE CITY OF SOCORRO, | | No. 08-14-00009-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | County Court at Law No. 5 |
| | § | |
| ENRIQUE HERNANDEZ and | | of El Paso County, Texas |
| DAVID MALDONADO, | § | |
| | | (TC # 2011-DCV00688) |
| Appellees. | § | |

## **O P I N I O N**

This is an appeal to the trial court's denial of a plea to the jurisdiction filed by the City of Socorro. For the reasons that follow, we affirm.

### **FACTUAL SUMMARY**

According to the live pleadings below, on or about December 23, 2009, Enrique Hernandez and David Maldonado were involved in a collision on a darkened section of North Loop Drive in Socorro, Texas. The crash rendered Hernandez's car inoperable and it stopped dead in the street. The electrical system was damaged and the hazard lights were not working. A police unit of the City responded to a report of the wreck. When Officer Cesar Gonzalez arrived, he did not park his patrol car behind the stalled vehicle as a buffer. Instead, he parked on a side street and activated his overhead flashing lights. The officer ordered Hernandez and Maldonado to push the stalled vehicle out of the road. At that very moment, Virginia Guzman

was driving in the westbound lane of North Loop in the direction of the accident. She became distracted by the overhead lights of Office Gonzalez' police car. Consequently, she rammed her vehicle into Hernandez, Maldonado and Officer Gonzalez, causing severe bodily injuries. Specifically, the following allegations were pled:

> The occurrence made the basis of this suit … and the resulting injuries and damages were proximately caused by the negligent conduct of Defendant City of Socorro in one or more of the following respects:
>
> (a) In the use of its motor vehicle by failing to use its flashers or warning lights in a way to warn other motorists of the dangerous condition in the roadway.
>
> (b) In the use of a motor vehicle by failing to place the motor vehicle in an area to warn oncoming traffic of the dangerous condition in the roadway.
>
> (c) In using its motor vehicle by turning on its lights and flashers on a side street to distract motorists of the dangerous condition of the roadway.
>
> (d) After becoming aware of the dangerous condition existing in the roadway, failing to take reasonable steps to warn oncoming traffic or make the roadway safe for passage.
>
> (e) In using Plaintiff's vehicle by directing and ordering him to push and steer the car out of the roadway despite the inoperable condition.

The City filed a plea to the jurisdiction, which the trial court denied. This appeal follows.

## ISSUES FOR REVIEW

The City brings three issues for review. Issue One queries whether the allegations establish that the Appellees' injuries were proximately caused by the City's "use" of its police car. Issue Two asks whether their injuries were proximately caused by the City's use of Hernandez's disabled vehicle. Issue Three questions whether the pleadings establish that the dangerous condition created by Hernandez's disabled vehicle was a special defect.

## STANDARD OF REVIEW

A plea to the jurisdiction challenges a trial court's authority to decide the subject matter

2

jurisdiction of a specific cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225-26 (Tex. 2004); *Dallas Fort Worth Int'l Airport Bd. v. Cox,* 261 S.W.3d 378, 386 (Tex.App.--Dallas 2008, no pet.). Whether the trial court has subject matter jurisdiction is a question of law that we review *de novo. Miranda,* 133 S.W.3d at 226. In reviewing a grant or denial of a plea to the jurisdiction, we consider the plaintiffs' pleadings, construed in the plaintiffs' favor, and any evidence relevant to the jurisdictional issue without considering the merits of the claim beyond the extent necessary to determine jurisdiction. *Miranda,* 133 S.W.3d at 226; *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex. 2002). The plaintiff bears the burden to plead facts affirmatively establishing the trial court's subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993). If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded an opportunity to amend. *State v. Holland,* 221 S.W.3d 639, 643 (Tex. 2007); *Miranda,* 133 S.W.3d at 226-27. However, if the pleadings affirmatively negate the existence of the trial court's jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Miranda,* 133 S.W.3d at 227.

## THE TEXAS TORT CLAIMS ACT

In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit. *Miranda,* 133 S.W.3d at 224; *Texas Department of Transportation v. Jones,* 8 S.W.3d 636, 638 (Tex. 1999). The TTCA provides a limited waiver of sovereign immunity. TEX.CIV.PRAC.&REM.CODE ANN. §§ 101.001-.109 (West 2011) Sovereign immunity includes two distinct principles, immunity from liability and immunity from suit. *Miranda,* 133 S.W.3d at 224; *Jones,* 8 S.W.3d at 638. Immunity from liability is an affirmative defense, while

3

immunity from suit deprives a court of subject matter jurisdiction. *Miranda,* 133 S.W.3d at 224. The TTCA creates a unique statutory scheme in which the two immunities are co-extensive: "Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter." *Miranda,* 133 S.W.3d at 224, *quoting* TEX.CIV.PRAC.&REM.CODE ANN. § 101.025(a). Thus, the City is immune from suit unless the Act expressly waives immunity. *See* TEX.CIV.PRAC.&REM.CODE ANN. §§ 101.001(3)(B). Section 101.021 provides:

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> > (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> >
> > (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

The term "use" has been defined to mean "to put or bring into action or service; to employ for or apply to a given purpose." *LeLeaux v. Hamshire-Fannett Independent School District,* 835 S.W.2d 49, 51 (Tex. 1992). The term "operation" is defined to mean "a doing or performing of a practical work." *Id.* The phrase "arises from" requires a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle or piece of equipment. *LeLeaux,* 835 S.W.2d at 51. This requires more than mere involvement of the property. *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 543 (Tex. 2003). The vehicle's use or operation must have actually caused the injury. *Id.* The operation or use of the motor vehicle does not cause injury if it merely furnishes the condition that makes the injury

4

possible. *Id.*

## DID THE OFFICER "USE" HIS PATROL CAR?

This issue actually consists of two components. First, Appellees have alleged that the officer failed to park his patrol car behind Hernandez's disabled vehicle and failed to use the vehicle's flashers to warn oncoming motorists of the danger posed by Hernandez's vehicle. We agree with the City that this is tantamount to non-use. *See Jackson v. City of Corpus Christi,* 484 S.W.2d 806, 809-810 (Tex.Civ.App.-Corpus Christi 1972, writ ref'd n.r.e.). There, the plaintiff sued the City of Corpus Christi alleging that two police officers were negligent in failing to properly direct traffic around a car stalled in the middle of the street. The court held that the plaintiff's pleading did not allege a "use" of a motor vehicle. *Id.* at 809. Because the failure to remove the stalled vehicle or to use the police car to direct traffic around the stalled vehicle are not a "use" of a motor-driven vehicle as that term is meant in the TTCA, we conclude that the "failure to . . . " claims do not fall within this waiver of governmental immunity.

The second component of Issue One is more complicated. Appellees alleged that the officer negligently used his patrol car by pulling off of North Loop and onto a side road where he activated his flashing lights. This action, they assert, distracted drivers on the darkened North Loop, causing them to believe that a traffic hazard existed on a side street rather than directly in front of them. The City counters that this is merely an allegation that Officer Gonzalez was guilty of poor judgment or human error in deciding where to park. In support of this argument, it first directs us to *City of Houston v. Rushing*, 7 S.W.3d 909 (Tex.App.--Houston [1st Dist.] 1999, pet. denied) (en banc). There, the plaintiff alleged that a truck owned and operated by defendant Guevara was stopped perpendicular to all three lanes of traffic on Memorial Drive and obscuring the left two lanes of traffic. Guevara's truck was purportedly hit by another vehicle which failed

5

to stop. A City of Houston police officer, guarding the Houston Police Memorial, heard the accident and went over to the scene. Subsequently, another officer arrived on the scene. According to the pleadings, the police failed to secure the scene, failed to use available warning devices to alert others, failed to move Guevara's car and failed to alert oncoming vehicles of the hazard. Along came a motorcycle driver who had no alternative but to swerve to avoid Guevara's parked vehicle. In doing so, he lost control of the motorcycle and was killed. Plaintiff Rushing, his passenger, suffered severe, debilitating, permanent injuries.

The appellate court first concluded that because the failure to remove the stalled truck or to use the police car to direct traffic around the stalled truck are not a "use" of a motor-driven vehicle, the petition failed to state a claim within the waiver of governmental immunity. It then addressed the plaintiffs' contentions that the officers misused tangible personal property by failing to use the marked police unit with its lights and sirens to attract attention to the accident and failing to park the police car in the street and activate its flashers. The court determined that the officers' decisions constituted non-use. Even though the officers may have used negligent judgment, there was no misuse of tangible property.

The First Court of Appeals has itself distinguished *Rushing* in *Junemann v. Harris County*, 84 S.W.3d 689, 696 (Tex.App.--Houston [1st Dist.] 2002, pet. denied). There the officer used his vehicle by parking it in a moving lane of traffic and turning on his hazard lights, but allegedly misused the vehicle by not activating the overhead emergency lights. The court concluded that the Act waived immunity for claims of officer negligence in parking a vehicle in the lane of traffic and activating hazard lights while failing to illuminate overhead flashers.

This case differs from *Rushing* and *Junemann.* Officer Gonzalez *did* activate his emergency flashers but he *didn't* park in a lane of traffic. He parked on a side street. The Texas

6

Supreme Court has recently addressed a similar case involving the deadly collision of two eighteen wheelers. *See Ryder Integrated Logistics, Inc. v. Fayette County, Texas,* 453 S.W.3d 922 (Tex. 2015). The court first noted that the relevant facts were largely undisputed:

> The collision occurred during the course of an otherwise routine traffic stop on Interstate 10 in rural Fayette County. Deputy Sheriff Randy Thumann stopped Ralph Molina for a minor traffic violation at around 3:00 in the morning. Molina parked his eighteen-wheeler on the shoulder just right of the eastbound lanes, and Thumann pulled up behind him. When Molina's truck began rolling backward toward Thumann's cruiser, Thumann repositioned his vehicle. He drove up the grassy berm to his right and then turned his cruiser so that it faced eastbound traffic, though it remained in the grass to the right of the shoulder. The cruiser's headlights and high-beam spotlight were illuminated, as were its emergency lights.
>
> Within seconds of the cruiser turning to face oncoming traffic, and while Thumann was still repositioning it, an eastbound Ryder eighteen-wheeler driven by Roberto Solis, Sr., veered right and clipped the back of Molina's trailer. The collision caused Solis's truck to overturn and ignite. Solis did not survive the fire.

*Id.* at 926. The plaintiffs focused on the deputy sheriff, who "failed to follow proper . . . protocols and procedures in moving his motor vehicle," and "blinded and distracted [Solis] causing him to strike the rear of the Molina 18-wheeler." *Id.* at 928. The trial court granted the plea to the jurisdiction and the court of appeals affirmed, *citing Texas Department of Public Safety v. Grisham*, 232 S.W.3d 822 (Tex.App.--Houston [14th District] 2007 no pet.). The Supreme Court reversed and remanded:

> In holding that Thumann's use of the cruiser "merely furnished [a] condition," the court of appeals relied on *Texas Department of Public Safety v. Grisham*, 232 S.W.3d 822 (Tex.App.--Houston [14th Dist.] 2007.
>
> * * * * *
>
> Although we express no opinion as to the substance of the *Grisham* panel's analysis, we decline to follow its reasoning here. The critical question in *Grisham* was whether the use of emergency lights alone renders a parked cruiser in "operation or use" for the purpose of the TTCA waiver. We need not resolve that issue today, as it is undisputed that Thumann was driving -- and thus operating -- his vehicle at the time the accident occurred.

7

*Id.* at 930.[1]

But we must address that specific issue today. Does an officer's action in activating flashing lights in a *parked* vehicle constitute "use" or "operation"? Here, drivers on a dark road had their attention diverted from the danger just ahead, believing that the true hazard was to the side. Failure to secure the scene or use warning flashers was not "use" in *Rushing*. Parking in a lane of traffic while using hazard lights but not flashing signals constituted "use" in *Junemann*. Pointing headlights and flashers at oncoming traffic was found to be "use" in *Ryder*, primarily because the officer was repositioning the car at the time of impact. We believe that the common thread is the use of blinding or distracting lights rather than whether the car was being driven or whether it was parked. We conclude that the officer "used" the vehicle when he activated the overhead flashing lights.

Recognizing this, the City next argues that there must be "a nexus between the operation or use of the motor-driven vehicle or equipment and a plaintiff's injuries." It directs us to *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003), where the Supreme Court noted that this nexus requires more than the mere involvement of a vehicle. *Id. Whitley* is rather far afield factually. There, Whitley was confronted by another passenger, Burkley, and because of the commotion, the bus driver stopped the bus. He told Whitley to get off and said he would return for him shortly. As Whitley exited, Burkley threatened to kill him. Burkley then got off the bus about two blocks farther down. Burkley went directly home to gather her son and his friends to begin a search for Whitley. Because the bus driver had not returned, they found Whitley where the bus had left him and beat him severely. The Supreme Court concluded that

---

[1] The critical question in *Grisham* was whether the parked car caused the injury or merely furnished the condition that made the injury possible. The opinion did not speak to whether the parked vehicle was in use for purposes of the TTCA.

8

the bus had not caused the injury.

In this same vein is *City of Kemah v. Vela,* 149 S.W.3d 199 (Tex.App.--Houston [14th Dist.] 2004, pet. denied), where a police officer made a traffic stop and parked behind the plaintiff's car in a left-turn lane. The officer placed the plaintiff in the back seat of the patrol car. A second police officer parked his patrol car behind the first and activated his emergency lights. A truck subsequently drove into the back of the second patrol car which in turn struck the first patrol car injuring the plaintiff. The plaintiff alleged that his injuries arose from the negligent parking of the patrol cars in the turning lane. The Fourteenth Court of Appeals determined that the plaintiff's injuries did not arise from the use or operation of the patrol cars and that the parking of the patrol cars merely furnished the condition that made the injuries possible.

> Under these facts, the patrol cars merely furnished the condition that made Vela's injuries possible. Vela is not complaining that putting him in a patrol car following his arrest was negligent; he contends the officers acted negligently when they placed him in an improperly parked patrol car. But, this did not cause Vela's injuries. Starnes caused Vela's injuries *when he ignored the flashing lights* of two police cars and ran into Officer Shafer's patrol car.

*Id.* at 204. (Emphasis added).

*Texas Department of Public Safety v. Grisham,* 232 S.W.3d 822 (Tex.App.--Houston [14th Dist.] 2007, no pet.) is more problematic. There, the plaintiff was traveling in the right lane of a road when he approached the scene of an accident. A vehicle involved in the accident was partially obstructing the left lane and a DPS cruiser was parked on the right shoulder of the roadway with its emergency lights activated. The plaintiff changed into the left lane and struck the disabled vehicle. He sued, alleging that the trooper used or misused the cruiser and overhead emergency lights in a manner that funneled Grisham directly into the disabled vehicle. The Fourteenth Court of Appeals held that sovereign immunity was not waived because the cruiser did not actually cause the plaintiff's injury; it merely furnished the condition that made the

9

plaintiff's injury possible.  *Id.* at 827.  Comparing these two cases, we observe that Vela ignored the flashing lights while Grisham obeyed them and changed lanes.  Both actions resulted in accidents.  In each case, the court concluded that the flashing lights merely furnished the condition that made the plaintiff's injury possible.

We turn now to the recent *Ryder* opinion.  The Supreme Court clearly determined that the actions of the deputy sheriff in repositioning his cruiser and pointing the headlights and high-beam spotlight directly at oncoming traffic involved use of the patrol car.  It also found that the plaintiff could satisfy the "arising from" standard by demonstrating proximate cause.  "Because proximate cause is ultimately a question for a fact-finder, we need only determine whether the petition 'creates a fact question' regarding the causal relationship between Thumann's conduct and the alleged injury".  *Ryder,* 453 S.W.3d at 929.  The court then reviewed the allegations relating to cause in fact and foreseeability.

> The allegations easily satisfy the standard.  Ryder pleads that by directing the cruiser's lights toward eastbound traffic, Thumann caused Solis's errant driving.  Ryder thus contends that the collision -- and any associated harm -- would not have occurred absent Thumann's decision to drive his car toward oncoming traffic.
>
> The allegations are also sufficient to generate a fact issue regarding the second prong of proximate cause. . . .  According to Ryder, a reasonable peace officer could have foreseen that driving westbound near an eastbound shoulder at night -- with headlights and emergency lights illuminated -- might confuse drivers, disrupt traffic, and lead to a collision much like the one that ultimately occurred.  And the alleged harm is of the very character that might reasonably have been anticipated.

*Id.* at 929.  Also entering into the analysis is whether the alleged cause -- here the flashing emergency lights on a side road -- is geographically, temporally, or causally attenuated from the injury.  *Id.* at 930.  Geography must be our focus.  Hernandez's car was directly in front of Guzman as she travelled down North Loop.  The pleadings allege that she was distracted by the bright lights off to the side road and looked in that direction.  Instead of alerting her to the

10

accident remnants ahead, the lights diverted her attention.  In light of *Ryder,* we ultimately conclude that the flashing lights did not merely furnish the condition that made the plaintiffs injuries possible.  We overrule Issue One.

## DID THE OFFICER "USE" HERNANDEZ'S CAR?

Issue Two focuses on the officer's orders that Hernandez and Maldonado move the disabled vehicle out of the road way.  Hernandez was on the driver's side of the vehicle with the driver's door open, simultaneously pushing the vehicle while steering it off the roadway with his right hand, when Guzman ran into him.  Our analysis requires a review of several cases and an opinion from this court which harmonizes them.

We begin with *LeLeaux v. Hamshire–Fannett Independent School District,* 835 S.W.2d 49 (Tex. 1992), where a band student jumped out of the rear emergency door of a parked school bus to retrieve a pillow that had fallen.  The student bumped her head when she re-entered through the same door.  The bus driver was not present when these events took place.  After the bus driver entered the bus and discovered that the back door was open, he asked the student to close it and she fell to the ground.  The student sued the school district, alleging it was negligent in its operation and use of school buses because of its practice of regularly loading and unloading band students and their instruments through the emergency doors.  She made the same allegation against the bus driver.  The trial court granted summary judgment for the school district on the ground of sovereign immunity. The Supreme Court held that while the statute does not specify whose operation or use is necessary -- the employee's, the person who suffers injury, or some third party -- the more plausible reading is that the required operation or use is that of the employee.  *Id.* at 51.  This requirement is consistent with the limited waiver of sovereign immunity provided by the TTCA.  *Id.*  Because the injury did not result from an employee's

11

operation or use of the bus, the court held that sovereign immunity was not waived. *Id.*

The Beaumont Court of Appeals followed *LeLeaux* in *Tarkington Independent School District v. Aiken,* 67 S.W.3d 319 (Tex.App.--Beaumont 2002, no pet.). There, a participant in a summer job training program sued the school district for injuries he received on school property while riding on the tailgate of a privately-owned truck driven by another program participant. The program participants had been instructed by a school district employee to move desks from one building to another, but they had not been told to use the truck for the task. The plaintiff's suit alleged negligent acts and/or omissions relating to improper supervision, direction, and control of non-employees and the improper training of school district employees. He also alleged that his injuries arose from the operation or use of a motor-driven vehicle. However, he did not allege that a school district employee operated or used the vehicle. The court held sovereign immunity was not waived because the allegations of negligence were not related to an employee's negligent use or operation of a vehicle. *Id.* at 326.

In *Sem v. State,* 821 S.W.2d 411 (Tex.App.--Fort Worth 1991, no pet.), a decision which pre-dates *LeLeaux,* the Texas State Department of Highways and Public Transportation entered into a contract with Tex-Sun Construction Company to pick up trash along state highways. The plaintiffs alleged that the State had inspectors on the job daily and exercised the right to control the details of the work performed by the contractor. A Tex-Sun employee was killed when struck by a car while attempting to post a warning sign along a freeway. His children sued the driver of the car, the contractor, and the State. Plaintiffs alleged that the defendants negligently used tangible personal property and operated or used a motor-driven vehicle or equipment which did not have adequate warning devices. With respect to the State, they specifically alleged that the State was negligent in its right of control over use and placement of the signs and other

12

warning devices, including the warning device on the independent contractor's vehicles. The trial court granted the State's motion for summary judgment based on sovereign immunity. Relying on Section 414 of the Restatement (Second) of Torts, the Fort Worth Court of Appeals found that summary judgment was improperly granted because there was a fact issue whether the State retained and exercised sufficient control over the manner in which the independent contractor performed its work even though it did not retain the degree of control which would subject it to liability as a master. *Id.* at 415. Certain provisions in the contract indicated that the State retained the power to forbid work from being done in a dangerous manner. *Id.* The court also rejected the State's argument that sovereign immunity was not waived under Section 101.021 because it did not own or use the tangible personal property or vehicle in question. *Id.* at 415-16. The court held that the Act does not require that the State own or directly use the vehicle or property that causes death, and therefore, immunity is waived in circumstances where the State has assumed responsibility for proper use of tangible personal property and negligent exercise of this responsibility by its employee results in death. *Id.* at 416.

We turn next to *County of Galveston v. Morgan,* 882 S.W.2d 485 (Tex.App.-Houston [14th Dist.] 1994, writ denied). Morgan, the employee of an independent contractor, was injured when he fell from the bed of a truck while delivering road resurfacing material to repair a county road. Galveston County supplied spotters who signaled the truck drivers when to move forward and when to stop. One of the spotters moved the truck too close to a power line and Morgan climbed into the bed of the truck to determine how close it was to the power line. He received an electric shock which knocked him to the ground. The jury found Morgan and the county equally negligent. On appeal, the county challenged the legal and factual sufficiency of the evidence to support a finding that the accident arose from a county employee's use or operation of a motor

13

driven vehicle. The county argued that the vehicle was not a county truck and the driver was not a county employee. The court of appeals rejected these arguments and found a waiver of immunity because the county spotters "used" or "operated" the trucks by controlling their movements. *Id.* at 490. The court distinguished *LeLeaux* on the ground that while the bus was not in use and merely provided the setting for the student's injury, the truck in the instant case was in use at the time of the accident. *Id.* at 490-91.

In *City of El Campo v. Rubio,* 980 S.W.2d 943 (Tex.App.--Corpus Christi 1998, pet. dism'd w.o.j.), the Corpus Christi Court of Appeals followed *Morgan.* In that case, a police officer allegedly ordered an unlicensed passenger to operate a motor vehicle following the driver's arrest. The passenger, in accordance with the officer's order, followed the patrol car onto the highway and was struck by another vehicle. The court of appeals found that immunity was waived because the officer "used" or "operated" the vehicle by exercising control over it. *Id.* at 945-46.

And finally, in *City of El Paso v. W.E.B. Investments,* 950 S.W.2d 166 (Tex.App.--El Paso 1997, pet. denied), the City of El Paso's street operations supervisor mistakenly ordered a third party's motor-driven equipment to demolish a condemned building before the time had expired for repairs to be made. This court found sovereign immunity was waived even though a governmental employee did not personally operate the motor-driven equipment. *Id.* at 170.

Here, the City argues that *LeLeaux* controls. We held in *Sepulveda v. County of El Paso*, 170 S.W.3d 605 (Tex.App.--El Paso, pet. denied) that these holdings can be reconciled. The Supreme Court did not hold in *LeLeaux* that the vehicle had to be driven by a governmental employee; it held only that a governmental employee "use" or "operate" the vehicle. *Rubio,* 980 S.W.2d at 946. "Operation" refers to a "doing or performing of a practical work" and "use"

14

means "to put or bring into action or service; to employ for or apply to a given purpose." *LeLeaux,* 835 S.W.2d at 51. In *LeLeaux,* the bus was not in use or operation at the time of the accident and was nothing more than the place where the student happened to injure herself. *Id.* In *Morgan, Rubio*, and *W.E.B. Investments,* however, there were allegations and evidence that a governmental employee "used" or "operated" a vehicle by directly controlling the actions of the actual operator. In *Sem,* the plaintiffs alleged that the State retained and exercised control over the warning devices used by the independent contractor, including those on its vehicles, and that Sem's death occurred because the vehicle he was using did not have the proper omnidirectional warning device. In *Sepulveda*, it was undisputed that a county employee did not personally operate or use a motor-driven vehicle or equipment.

The City suggests that a bright line rule will reduce interlocutory appeals of this genre. We disagree. As we noted in *Diaz v. Canutillo Indep. Sch. Dist.*, 311 S.W.3d 588, 594 (Tex.App.--El Paso 2010, no pet.), these cases are inherently fact specific and courts often must fit square pegs into round holes. We thus conclude the plaintiffs sufficiently alleged that the officer "used" or "operated" a motor-driven vehicle. And it was indeed this action that led directly to the injuries. We overrule Issue Two.

### WAS HERNANDEZ'S DISABLED CAR A SPECIAL DEFECT?

As the City accurately articulates, the TTCA generally limits a governmental unit's potential liability for premise-liability damages by classifying the user of the government's real property as a licensee rather than an invitee. TEX.CIV.PRAC.&REM.CODE ANN. § 101.022(a). This limitation does not apply to special defects such as obstructions on highways, roads, or streets. *Id*. § 101.022(b). When a special defect exists, the government owes the same duty to users that a private landowner owes to an invitee. *Texas Dep't of Transp. v. Perches*, 388

15

S.W.3d 652, 654-55 (Tex. 2012). Whether a condition is a special defect is a question of law that is reviewed *de novo. Id.* at 655.

We have found no Texas case holding that a disabled car on a highway is a special defect. *Rushing* noted that Texas jurisprudence is "uniform in holding that a vehicle that is temporarily blocking a public street is not a premises or special defect under the Texas Tort Claims Act." *Rushing,* 7 S.W.3d at 916. The San Antonio Court of Appeals extended the rule to a stopped vehicle: "[a] stopped vehicle is not a premises defect and does not present an unexpected and unusual danger to the ordinary users of the roadway." *Texas Dep't of Transp. v. Velasco*, 40 S.W.3d 702, 704 (Tex.App.--San Antonio 2001, no pet.). *Velasco* carefully tracked the numerous decisions addressing this issue:

> The Supreme Court of Texas determined in *State v. Burris* that "[a] fully operational motor vehicle, making an illegal movement or momentarily stopped on a highway, is neither a defect in the highway premises nor an excavation or obstruction or similar condition." *State v. Burris,* 877 S.W.2d 298, 299 (Tex. 1994). The Court explained that "[a] condition may be a special defect only if it is an excavation, obstruction, or some other condition which presents 'an unexpected and unusual danger to ordinary users of roadways.'" *Burris,* 877 S.W.2d at 299 (quoting *State Dept. of Highways v. Kitchen,* 867 S.W.2d 784, 786 (Tex. 1993)). Although *Burris* involved one unidentified, momentarily-stopped vehicle, and this case involves numerous vehicles stopped on the highway, the same principles apply: A stopped vehicle is not a premises defect and does not present an unexpected and unusual danger to the ordinary users of the roadway. Applying that principle here, a commercial eighteen-wheeler stopped on the highway is neither a condition of real property,[FN2] nor an excavation, obstruction, or some other condition which presents an unexpected and unusual danger to ordinary users of roadways. [FN3]

In footnotes two and three, the court enumerated the holdings:

> FN2. *Burris,* 877 S.W.2d at 299; *accord Kitchen,* 867 S.W.2d at 786 (icy bridge is premise defect); *Payne,* 838 S.W.2d at 238 (culvert running perpendicular to and beneath highway was premises defect, not special defect); *City of Houston v. Rushing,* 7 S.W.3d 909, 916 (Tex.App.--Houston [1st Dist.] 1999, no pet.) (stopped pickup truck blocking traffic as result of accident was not defect or dangerous condition of roadway); *Martinez v. City of Lubbock,* 993 S.W.2d 882, 885 (Tex.App.--Amarillo 1999, pet. denied) (hole in dirt path next to city street

16

was premises defect, not special defect); *City of Fort Worth v. Gay,* 977 S.W.2d 814, 819 (Tex.App.--Fort Worth 1998, no pet.) (water in street gutter was premises defect, not special defect).

FN3.  *Burris,* 877 S.W.2d at 299; *accord State v. Williams,* 932 S.W.2d 546, 550 (Tex.App.--Tyler 1995, pet. denied) (large metal sign lying on road was special defect); *Hindman v. State Dept. of Highways & Public Transp.,* 906 S.W.2d 43, 45 (Tex.App.--Tyler 1994, pet. denied) (bump on shoulder of road was not obstruction or excavation, and thus not a special defect); *State v. McBride,* 601 S.W.2d 552, 558 (Tex.Civ.App.--Waco 1980, writ ref'd n.r.e.) (slick and muddy condition of road that resulted from state's repair work was special defect because it was an excavation.); *Miranda v. State,* 591 S.W.2d 568, 570 (Tex.Civ.App.--El Paso 1979, no pet.) (floodwaters over state highway constituted special defect because it was an obstruction); *County of Harris v. Eaton,* 561 S.W.2d 245, 247 (Tex.Civ.App.--Houston [14th Dist.] 1978) (ten-inch deep pothole spanning width of road was an obstruction that constituted special defect), *aff'd* 573 S.W.2d 177 (Tex. 1978).

Appellees counter that the Supreme Court has backed away from defining a special defect as an "unexpected and unusual danger." *Denton County v. Beynon*, 283 S.W.3d 329, 332 fn.11 (Tex. 2009) ("We used "unexpected and unusual danger" in *Payne* to *describe* the class, not to *redefine* it.")(Emphasis in orig.).  Yet cases subsequent to *Beynon* have described special defects as a "type of 'unexpected and unusual danger to ordinary users of roadways.'"  *Texas Dep't of Transp. v. York*, 284 S.W.3d 844, 848 (Tex. 2009); *Reyes v. City of Laredo*, 335 S.W.3d 605, 607 (Tex. 2010).  We conclude as a matter of law that Hernandez's disabled vehicle was not a special defect within the meaning of the Torts Claims Act.  We sustain Issue Three.  Because we have found two bases upon which Appellees may move forward with their lawsuit, we affirm the judgment of the trial court below.

September 2, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating