**Affirmed and Opinion filed December 9, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00181-CV

### GALVESTON COUNTY, Appellant

### V.

### VICTORIA LEACH AND STACIE HABETZ, Appellees

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Cause No. 19-CV-0027**

## O P I N I O N

In this interlocutory appeal from the denial of a plea to the jurisdiction, Galveston County argues that its governmental immunity was not waived under the Texas Tort Claims Act[1] because the personal injuries alleged did not arise from a governmental employee's "operation or use of a motor-driven vehicle."[2] As to one

---

[1] Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001–.109.

[2] *See id.* § 101.021.

of the two plaintiffs, the County also contends that it had neither formal notice nor actual knowledge of its alleged fault. The plaintiffs—two pedestrians who were struck by a car operated by an unlicensed driver—maintain that the County effectively operated or used the car because the unlicensed driver acted under the deputy's control, and that the formal notice provided by one plaintiff gave the County actual knowledge of its alleged fault in causing or contributing to the other plaintiff's injury. Because the conflicting evidence creates questions of fact on these jurisdictional issues, we affirm.

## I. BACKGROUND

In May 2018, an event called "Go Topless Jeep Weekend" was held on Crystal Beach in Galveston County. Among the estimated 100,000 attendees were Jazzmine Chin, Craig Bell, Victoria Leach, and Stacie Habetz.

Chin decided to leave the event and Bell agreed to give her a lift in his Dodge Charger. Bell attempted to exit the beach via Monkhouse Road, which runs north and south perpendicular to the beach, but his car became stuck in the sand, blocking the traffic traveling east and west on the beach. Bell and Chin got out to check the car, then Chin sat in the car's driver's seat with the engine running and the air conditioner on. Chin, however, was not licensed to drive.

Meanwhile, Sergeant Brent Cooley and Corporal Rowlands, both of the Galveston County Sheriff's Office, had arrested a suspect for a weapons violation and were in a pickup truck heading east on the beach toward South Monkhouse Road to take the arrestee to the Crystal Beach substation. Rowlands was driving the truck, and Cooley was in the passenger seat. When the officers were between fifty and seventy-five yards from the intersection at South Monkhouse Road, traffic became gridlocked, and Cooley saw that the vehicle in front of Bell's Dodge was stuck in the sand at the intersection and three or four people were trying to dig the vehicle

2

out. Behind that vehicle, Bell's Dodge was blocking the intersection, bringing east-west traffic on the beach to a halt.

After telling Rowlands he was going to try to clear the intersection, Cooley walked to the Dodge and told Chin to move the car. Hearing this, Bell approached and told Cooley it was his, Bell's, car and that he would move it, but Cooley placed his hand on his gun and told Bell to shut up and back up. Chin told Cooley she did not have a driver's license, but Cooley again told her to move the car. Because Chin had previously had a learner's permit, she "thought [she] could handle it." But as she testified, "I've never driven a fast car like that before. And I wasn't used to the sound of the car and everything. So when I tapped the gas, I got scared, and my foot went down, and it just backed all the way up." Bell stated that the car "was spinning when it got out." The car continued in reverse, striking two pedestrians and a parked Jeep.

Leach had been standing in front of the parked Jeep, and she attempted to jump out of the way but one of her hands was caught between the Jeep and the Dodge. The reversing Dodge struck Habetz, too, but the parties do not describe Habetz's location or injuries.

Leach and Habetz sued the County for negligence in ordering an unlicensed driver to move a vehicle and in refusing to let the vehicle's owner move the car.[3] The County filed a plea to the jurisdiction on the ground of governmental immunity and lack of statutorily required notice, but the trial court denied the plea.

In two issues, the County argues that the trial court lacks subject-matter jurisdiction because (a) governmental immunity bars Leach's and Habetz's claims;

---

[3] Leach and Habetz dismissed their claims against the County for negligent hiring, training, and supervision. Habetz's husband also had sued the County for loss of consortium but later dismissed his claim.

and (b) as to Habetz's claims only, the County neither received pre-suit notice nor had actual notice of the claims.

## II. STANDARD OF REVIEW

Whether a court has subject-matter jurisdiction is a question of law that is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). We review the trial court's ruling on a plea to the jurisdiction de novo. *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). Parties may submit evidence supporting or opposing the plea, which we review under the same standard applicable to a traditional motion for summary judgment. *Id.* (citing *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016)). We take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Sampson*, 500 S.W.3d at 384. If the relevant evidence fails to raise a fact question on the jurisdictional issue, the court rules on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228. But if the evidence creates a fact question regarding the jurisdictional issue, then the trial court must deny the plea to the jurisdiction and allow the factfinder to resolve the issue. *Id.* at 227–28.

## III. THE TEXAS TORT CLAIMS ACT

The state generally has sovereign immunity from suit and liability. *See Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429–30 (Tex. 2016). When political subdivisions of the state act in a governmental capacity, they share in the state's immunity, which is then referred to as governmental immunity. *See id.* Unless waived, governmental immunity from suit defeats a trial court's subject-matter jurisdiction. *See Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).

4

The Texas Tort Claims Act provides a limited waiver of governmental immunity if certain conditions are met. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.025. Under these provisions, governmental immunity from suit and liability is waived for, among other things, personal injury proximately caused by the wrongful act or omission or the negligence of a governmental employee acting within the scope of employment if the personal injury "arises from the operation or use of a motor-driven vehicle" and "the employee would be personally liable to the claimant according to Texas law." *Id.* § 101.021(1).

Given the limited nature of the immunity waiver, courts strictly construe the operation-or-use requirement. *See, e.g.*, *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam); *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992). "Operation" means "a doing or performing of practical work." *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg ex rel. Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989) (quoting *Jackson v. City of Corpus Christi*, 484 S.W.2d 806, 809 (Tex. App.—Corpus Christi 1972, writ ref'd n.r.e.)). "Use" "means 'to put or bring into action or service; to employ for or apply to a given purpose.'" *Id.* (quoting *Beggs v. Tex. Dep't of Mental Health & Mental Retardation*, 496 S.W.2d 252, 254 (Tex. App.—San Antonio 1973, writ ref'd)). The Supreme Court of Texas has further explained that "the required operation or use is that of the employee. This requirement is consistent with the clear intent of the Act that the waiver of sovereign immunity be limited." *LeLeaux*, 835 S.W.2d at 51; *accord*, *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004) (section 101.021's waiver applies "only when the governmental unit is itself the user").

## IV. OPERATION OR USE OF A MOTOR-DRIVEN VEHICLE

In the first half of the County's first issue, the County argues that this case falls outside the Texas Tort Claims Act's waiver of immunity because Cooley did not operate or use the vehicle that struck Leach and Habetz. Leach and Habetz, however, maintain that Chin acted under Cooley's direction such that Cooley must be considered to have been controlling her actions, and thus, operating or using the vehicle himself. The differing sides understandably rely on differing authorities, which we will attempt to reconcile.

### A. The County's Authorities

In its first appellate argument, the County maintains that, under the facts in this case, Cooley did not operate or use the vehicle that struck Leach and Habetz because "operation" and "use" do not include law-enforcement officers' direction and control of traffic. In addition, the County argues that Cooley did not retain control over the vehicle Chin operated because Chin was free to disobey his instructions and she chose the vehicle's path and speed. In support of its position, the County relies primarily on three cases: *Jackson v. Corpus Christi*, 484 S.W.2d 806 (Tex. App.—Corpus Christi 1972, writ ref'd n.r.e.), *Townsend v. City of Alvin*, No. 14-05-00915-CV, 2006 WL 2345922 (Tex. App.—Houston [14th Dist.] Aug. 15, 2006, no pet.) (mem. op.), and *City of Sugar Land v. Gaytan*, No. 01-18-01083-CV, 2020 WL 2026374 (Tex. App.—Houston [1st Dist.] Apr. 28, 2020, no pet.) (mem. op.).

#### 1. *Jackson v. Corpus Christi*

In *Jackson*, the plaintiffs' car struck a stalled vehicle that had been left unattended in the left lane of traffic. *Jackson*, 484 S.W.2d at 807. The stalled vehicle's lights were off, and there were no flares or other warning devices. *Id.* The

plaintiffs alleged that two city police officers were negligent in failing to direct traffic and have the vehicle towed and in leaving the scene unattended or failing to make arrangements for someone else to stay with the stalled vehicle. *Id.* at 807–08. The trial court granted the city summary judgment on the ground of governmental immunity, and the appellate court affirmed, stating that a municipality retains immunity for the negligent acts or omissions of its employees, agents, or officials in "the regulation, direction and control of traffic on, over and across a public street or highway." *Id.* at 808. The court concluded that the plaintiffs' "allegations of negligence related directly to the control of traffic" and "do not in any way arise from the operation or use of a motor vehicle." *Id.* at 809.

*Jackson*, however, is factually distinguishable in that the plaintiffs in that case offered neither allegations nor evidence that a law-enforcement officer used or operated the vehicle at issue, whether directly or by controlling the actions of the vehicle's driver. To the contrary, the plaintiffs' complaint in *Jackson* was that the officers failed to take any action concerning the stalled vehicle.

The County, however, does not rely so much on the facts of *Jackson* as on that court's statement, "It has long been the rule in this State that the regulation, direction and control of traffic on, over and across a public street or highway is a governmental function . . . , and that while engaged in such function a city is not liable in damages." *Id.* at 808. In support of that statement, the *Jackson* court relied exclusively on cases predating the Texas Tort Claims Act,[4] when a municipality could be held liable for its agents' negligence only in performing proprietary functions, not governmental functions.[5] Nevertheless, the court acknowledged that

---

[4] The Texas Tort Claims Act became effective on January 1, 1970. Texas Tort Claims Act, 61st Leg., R.S., ch. 292, § 22, 1969 TEX. GEN. LAWS 874, 879 (eff. Jan. 1, 1970).

[5] *See, e.g.*, *Scroggins v. City of Harlingen*, 131 Tex. 237, 247, 112 S.W.2d 1035, 1040 (1938) ("The rule is well settled that a municipal corporation is not liable for the negligence of its

7

the Texas Tort Claims Act provides exceptions to a municipality's immunity, even when performing a governmental function. *Id.* at 808. The allegations in that case simply did not involve the police officers' operation or use—even indirectly—of a motor-driven vehicle.

### 2. *Townsend v. City of Alvin*

In *Townsend*, a city police officer stopped Michael Leroux for speeding and discovered that Leroux was unlicensed and untrained and that the vehicle was uninsured. *Townsend*, 2006 WL 2345922, at *1. The officer told Leroux to drive home. *Id.* Minutes later, Leroux ran a red light, broadsiding another car and killing its driver. *Id.* The decedent's survivors sued the city, alleging that the officer "exercised control" over Leroux's vehicle when the officer "commanded Leroux to drive straight home." *Id.* We disagreed, explaining that the officer "retained no control over Leroux's vehicle, and Leroux would suffer no consequence for disobeying" the officer. *Id.* at *3. We further pointed out that the officer had released Leroux with an admonishment, "trusted that Leroux would comply, and was not present when the accident occurred." *Id.* Thus, we concluded that the city retained its immunity.

---

agents and employees in the performance of purely governmental matters solely for the public benefit."), *judgment set aside on reh'g*, 131 Tex. 237, 114 S.W.2d 853 (1938); *City of Abilene v. Woodlock*, 282 S.W.2d 736, 738 (Tex. App.—Eastland 1955, writ ref'd) ("[A municipality] has the duty under its police power to make proper regulations for the convenience and protection of the public."); *Parson v. Tex. City*, 259 S.W.2d 333, 334 (Tex. App.—Fort Worth 1953, writ ref'd) ("It is well settled that a city, in the exercise of a governmental as distinguished from a proprietary or corporate function, is exempt from liability for damages occasioned by its negligence in carrying out such function."). Since the enactment of Texas Civil Practice and Remedies Code § 101.0215, however, a municipality can be liable for damages arising from its governmental functions. *See* Tex. Civ. Prac. & Rem. Code Ann. §101.0215(a).

It is also worth noting that the distinction between governmental and proprietary functions applies only to municipalities, not to counties, and thus, can have no application in this case.

### 3.    *City of Sugar Land v. Gaytan*

The *Gaytan* court relied on both *Jackson* and *Townsend*. In *Gaytan*, the plaintiff was injured while participating in a triathlon. 2020 WL 2026374, at *1. Two city law-enforcement officers were directing traffic related to the event, and as Gaytan biked toward an intersection, one of the officers signaled motorist Daksha Shah, who was driving on an intersecting street, "to proceed through the intersection to make her left hand turn." *Id.* Gaytan alleged that Shah entered the intersection but then paused in the traffic lane, causing Gaytan to strike her car. *Id.* According to Gaytan, the officers were "negligent in instructing [Shah] to enter the [intersection] without sufficient time to pass through the intersection and avoid the oncoming [triathlon] participants." *Id.* (alterations in original). The city asserted governmental immunity, but the trial court denied the jurisdictional plea. *Id.* at *2.

In his response to the city's appeal, Gaytan argued that the officers directing traffic at this location were "in complete control of the use or operation of the vehicles [, including Shah's car,] at the intersection." *Id.* at *4 (alterations in original). After discussing *Jackson* and *Townsend*, among other cases, the reviewing court concluded that Gaytan did not allege facts demonstrating that the "officers' direction or control of traffic constituted 'operation' or 'use' of a motor-driven vehicle." *Id.* at *6. The court did not explain the factors supporting this conclusion.

In a more detailed alternative holding, the *Gaytan* court added that even if the officers' act of directing traffic constituted the operation or use of a motor vehicle, Gaytan had alleged that the collision occurred because Shah paused her vehicle in the traffic lane, and he did not allege that the officers directed her to pause her vehicle. *Id.* at *6. Thus, the court reasoned that Gaytan's injuries did not arise from the officers' operation or use of a motor-driven vehicle as required by the statute, but from an action by Shah that the officers did not instruct her to do. *See id.* at *6–

9

7. For each of these independent reasons, the court held that the city retained immunity from Gaytan's claims.

## B.    Leach and Habetz's Authorities

Leach and Habetz respond that, in effect, Cooley operated or used the vehicle that Chin drove because Chin acted under Cooley's control. In support of this position, Leach and Habetz rely primarily on *County of Galveston v. Morgan*, 882 S.W.2d 485 (Tex. App.—Houston [14th Dist.] 1994, writ denied), and *City of Socorro v. Hernandez*, 508 S.W.3d 1 (Tex. App.—El Paso 2015, pet. denied).

### 1.    *County of Galveston v. Morgan*

In *Morgan*, private tractor-trailer rigs with dump beds were used to spread gypsum on a road. *Morgan*, 882 S.W.2d at 487. As a truck slowly moved forward, a hydraulic ram gradually raised the truck's dump bed so that gypsum would be spread evenly behind it. *Id.* at 487–88. County employees acted as spotters to watch for overhead obstructions and to signal the driver when to move forward or stop. *Id.* at 488. The front spotter directed a driver to move a truck so that the top of the raised dump bed was less than two feet from a live power line. *See id.* Morgan climbed the trailer to see if the dump bed could be safely lowered and received an indirect electric shock that knocked him to the ground, injuring him. *See id.* A jury found the county and Morgan equally liable, *id.* at 487, and on appeal, the county argued that there was legally and factually insufficient evidence that the accident arose from a county employee's operation or use of a motor-driven vehicle. *Id.* at 490. This court explained,

> [The spotters] were a necessary part of the job. The spotters told the truck driver when to move forward, how far to move, when to raise his bed, how far to raise it, when to lower his bed, and when to stop. The movement of the truck and the laying of the gypsum was within the

10

spotters' sole discretion. If a driver moved his truck contrary to the spotters' direction, he could be fired.

*Id.* We therefore rejected the county's argument, instead concluding that county employees "'used or operated' the trucks by exercising complete control over their 'use or operation.'" *Id.*

### 2. *City of Socorro v. Hernandez*

In *Hernandez*, the authoring court similarly held that two injured plaintiffs adequately alleged that a governmental employee operated or used a motor-driven vehicle, though the employee himself had never driven it. In that case, plaintiffs Hernandez and Maldonado were involved in a collision on a dark road, leaving Hernandez's car and hazard lights inoperable. *Hernandez*, 508 S.W.3d at 3. A city police officer parked his patrol car on a side street, activated his overhead flashing lights, and ordered the two men to push Hernandez's car out of the street. *Id.* Another driver, distracted by the patrol car's lights, crashed into Hernandez, Maldonado, and the police officer, severely injuring them. *Id.* The *Hernandez* court concluded that in *Morgan* and similar cases,[6] "there were allegations and evidence that a governmental employee 'used' or 'operated' a vehicle by directly controlling the actions of the actual operator." *Id.* at 10. The *Hernandez* court held that the plaintiffs' allegations in the case before it satisfied that test, and thus, the city's immunity was waived.

### C. Reconciling the Authorities

Leaving aside *Jackson*, which, as we stated, is distinguishable, the cases on which each side relies concern claims that a governmental employee operated or

---

[6] *See City of El Campo v. Rubio*, 980 S.W.2d 943, 945–46 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.); *City of El Paso v. W.E.B. Invs.*, 950 S.W.2d 166, 170 (Tex. App.—El Paso 1997, pet. denied).

used a motor vehicle not by personally exercising physical control of the vehicle, but by directing the actions of those who did.[7] In *Townsend*, *Gaytan*, *Morgan*, and *Hernandez*, each authoring court engaged in a fact-specific inquiry to determine whether the claimed indirect control amounted to the operation or use of the motor vehicle by a governmental employee.

The differing outcomes seem to have turned on whether the drivers in each case had complied with, or were in the act of complying with, the directions of a governmental employee who was present when the accident occurred. In *Townsend*, there is no indication whether the unlicensed driver complied with the officer's instruction to "drive straight home," but we do know that the officer was not present at the accident. *See Townsend*, 2006 WL 2345922, at *3. In *Gaytan*, the officers who directed the driver were present when the accident occurred, but the driver acted independently in pausing the vehicle rather than proceeding to turn as the officers directed. 2020 WL 2026374, at *6. But in both *Morgan* and *Hernandez*, governmental employees were present when the accident occurred, and under the facts alleged, compliance with the governmental actor's directives at the scene allegedly was a proximate cause of the plaintiffs' injuries. In *Hernandez*, a police officer "ordered Hernandez and Maldonado to push [Hernandez's] stalled vehicle out of the road," and they complied. *Hernandez*, 508 S.W.3d at 3. Hernandez "was on the driver's side of the vehicle with the driver's door open, simultaneously pushing the vehicle while steering it off the roadway with his right hand, when [a distracted driver] ran into him." *Id.* at 9. The reviewing court stated that the officer's

---

[7] There is a split of authority among Texas appellate courts about whether a governmental employee can constructively "operate" or "use" a vehicle if the employee is not the vehicle's actual driver. *See Townsend v. City of Alvin*, No. 14-05-00915-CV, 2006 WL 2345922, at *2 nn. 4 & 5 (Tex. App.—Houston [14th Dist.] Aug. 15, 2006, no pet.) (mem. op.) (collecting cases). As *Morgan* illustrates, this Court has recognized such constructive operation or use.

action in ordering the men to push the car out of the street "led directly to the injuries" and the court concluded that the officer "used" or "operated" Hernandez's vehicle. *Id.* at 11. Thus, the *Hernandez* court concluded that immunity was waived. In *Morgan*, governmental employees exercised "complete control" over the movement of the trucks dumping gypsum on a road, and directed the compliant driver of the truck too close to a power line. *Morgan*, 882 S.W.2d at 490. We concluded that immunity was waived.

We see the same principle in *City of El Camp v. Rubio*, 980 S.W.2d 943 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.), a case that is factually more like this case than the cases cited by the parties. In that case, David Rubio was driving with his wife Pascuala Torres and their two minor children at approximately midnight when he was stopped and arrested for driving with a suspended license. *Id.* at 944. None of the vehicle's other occupants was licensed to drive. *Id.* The officer allegedly ordered Rubio's wife to follow the patrol car to the police station and said he would activate the patrol car's emergency flashers to clear the road. *Id.* The officer pulled onto the highway and started making a U-turn, and as Torres pulled the family's van onto the highway to follow, an oncoming vehicle struck the van. *Id.* The Thirteenth Court of Appeals held that, given the allegations that "Torres was acting under 'direct orders' from [the officer]," the trial court did not err in denying the municipal defendant's plea to the jurisdiction. *Id.* at 946–47.

Here, Leach and Habetz pleaded and offered evidence that, as in *Rubio*, a law-enforcement officer ordered an unlicensed driver to drive a motor vehicle she was not qualified to operate safely, and that the accident was the result of her attempt to comply with the officer's directions. Although there is conflicting evidence on several points—including whether Cooley knew Chin was unlicensed—there is at least a question of fact as to whether Cooley exercised such control as to be

considered the operator or user of the motor vehicle. We overrule the remainder of the County's first issue.

## V. OFFICIAL IMMUNITY

The provision of the Texas Tort Claims Act at issue waives immunity for personal injury from the operation or use of a motor-driven vehicle only if the governmental "employee would be personally liable to the claimant according to Texas law." *Id.* § 101.021(1). In the remainder of its first issue, the County contends that the waiver does not apply because Cooley is entitled to official immunity, and thus, he would not be personally liable to Leach and Habetz. *See Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 164 n.7 (Tex. 2016) (official immunity may protect an officer sued in the officer's personal capacity).

Official immunity is an affirmative defense that applies to a governmental employee's good-faith performance of a discretionary function within the scope of the employee's authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). Here, only Cooley's good faith is disputed.

To establish Cooley's good faith, the County was required to show that a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred. *See Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002). The County need not prove that it would have been unreasonable *not* to engage in the conduct or that all reasonably prudent officers would have acted as Cooley did. *See id.* The County was required to establish "only that a reasonably prudent officer, under similar circumstances, *might* have reached the same decision." *Id.* A witness's opinion that a law-enforcement officer acted in good faith does not meet this standard if the witness reached this conclusion by assuming the truth of disputed facts.

14

The County presented no evidence of good faith. Although the County relied on Cooley's testimony, he offered no opinion about what a reasonably prudent officer might have believed, instead testifying about his subjective state of mind and his version of events. He testified that he has seen vehicles of all kinds become stuck in the sand in the intersections leaving the beach, because as one moves inland, the sand "becomes softer and much deeper and more difficult to navigate and cars often times, if not always, get stuck." He also stated that "traffic at a standstill becomes very, very dangerous on the beach," because fights arise between entire groups of people, and law-enforcement officers "can't navigate and respond to such fights that . . . sometimes involve weapons." He considered it important to clear the intersection not only for these reasons but also so that he and Rowlands could continue transporting their prisoner.

Moreover, his version of events is disputed. He testified that the Dodge was not stuck in the sand; that Chin did not tell him she was unlicensed; and that he learned after the accident that Bell owned the vehicle. Given the disputed evidence, we must assume that the Cooley knew the Dodge was stuck in the sand; that he knew Chin was unlicensed to drive; that he knew Bell owned the car and had asked to move it himself; and that, despite knowledge of all these facts—and without clearing pedestrians from the area behind the vehicle—he insisted that Chin move the car herself. There is no evidence that a reasonably prudent officer might have believed Cooley's decision justified under these circumstances; thus, there is no evidence that Cooley would be entitled to official immunity so as to place Leach's and Habetz's claims against County outside of the Texas Tort Claims Act's waiver of governmental immunity.

We overrule the County's first issue.

15

## VI. ACTUAL NOTICE

Within six months of an incident giving rise to a claim against a governmental unit, the governmental unit must receive notice reasonably describing the damage or injury claimed, the time and place of the incident, and the incident itself. TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a). Formal notice is not required "if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." *Id.* § 101.101(c). The requirement of formal notice or actual knowledge is jurisdictional. *See* TEX. GOV'T CODE ANN. § 311.034.

Because Habetz failed to provide formal notice, the trial court has jurisdiction over her personal-injury claim only if the County had actual knowledge, that is, knowledge of (a) the injury, (b) the County's "alleged fault producing or contributing to" the injury, and (c) the identity of the parties involved. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam). Whether a governmental unit has actual notice is a fact question when the evidence is disputed, but it is a question of law when the evidence is undisputed. *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 776 (Tex. 2018).

The County asserted in its plea to the jurisdiction that it received no formal pre-suit notice from Habetz and that the County first learned of Habetz's claim when she was added as a plaintiff in an amended petition filed more than nineteen months after the accident. The County stated that it previously had no "actual notice that . . . Habetz had received some injury."

As evidence of the County's actual knowledge, Habetz relied on an attorney's letter providing timely formal notice of Leach's claim and enclosing Cooley's crash report. In the letter, the attorney stated that at about 4:45 p.m. on May 19, 2018, Cooley observed Chin in the driver's seat of a vehicle blocking the intersection of

16

the beach and South Monkhouse Road. According to the attorney, Cooley ordered Chin to move the vehicle, and though she initially resisted, she complied when Cooley "demanded immediate action." The attorney wrote that Chin "accelerated the vehicle in reverse and struck another vehicle and two pedestrians, including Victoria Leach." The attorney also stated, "*After* Ms. Chine [sic] crashed the car, Sgt. Cooley discovered that Ms. Chine [sic] did not possess a driver's license."[8] The attorney described how Leach's right hand was injured, and he wrote that Leach asserts Cooley "was negligent in demanding that Chin drive a vehicle she was not qualified to drive."

In the enclosed crash report, Cooley identified Chin as the driver of the Dodge, which is referred to in the report as Unit 1. He referred to the parked Jeep as Unit 2 and Leach and Habetz as, respectively, Units 3 and 4. Cooley described the incident as follows:

> Unit 1 was stopped in the intersection of the beach and S Monkhouse Rd, blocking traffic. Unit 1 driver was instructed to back up to clear the intersection. Unit 1 driver accelerated in reverse, striking Units 2, 3 and 4. Unit 2 sustained minor damage. Units 3 and 4 both sustained injuries and required medical transport to UTMB-GALVESTON by PEMSI. Unit 1 driver was found to be unlicensed and arrested for the same.

The crash report therefore describes the incident, the parties involved, and the fact of Habetz's injury.

In response to this evidence, the County argued that the second element of actual knowledge was unmet because there is no evidence that the County "had subjective awareness that it was in some manner at fault in connection with the collision." *Tenorio*, 543 S.W.3d at 778. To provide a causal link between the County and the injuries, the attorney representing Leach alleged that Cooley caused Leach's

---

[8] Emphasis added.

injures by negligently demanding that Chin drive a vehicle she was not qualified to operate; however, the attorney stated that Cooley discovered after the crash that Chin was unlicensed. There is nothing in the letter or the crash report suggesting that, at the time Cooley insisted Chin move the vehicle, he had any reason to suspect that Chin, the apparent driver of the vehicle, was unqualified to do so.

But, the letter and crash report are not the only evidence relevant to actual notice. Although Cooley and Chin both testified that it was only after the crash that Chin told the officer she was unlicensed, Bell testified that Chin disclosed this to Cooley before moving the car. Bell further testified that he identified himself to Cooley as the vehicle's owner and said he would move the car, but Cooley angrily refused. Bell also testified that the Dodge was stuck in the sand when Cooley told Chin to move the car, and when she did so, it was "spinning" before "catch[ing] grip" and backing up. Finally, although all witnesses agreed that the beach was unusually crowded that day, Cooley could not recall telling pedestrians to clear the area behind the car before ordering it reversed out of the intersection. Construing the conflicting jurisdictional evidence in Habetz's favor, Cooley encountered a vehicle stuck in the sand on a crowded beach but refused to allow the car's owner to move it, and without clearing pedestrians from the area, insisted that an unlicensed driver move the car. In attempting to comply with Cooley's commands, Chin struck and injured Leach and Habetz.

Against this backdrop, there is at least a question of fact as to whether the attorney's letter placed the County on notice that "the connection had been made" between the pedestrian' injuries and Cooley's insistence that an unlicensed driver move the vehicle. *See Worsdale v. City of Killeen*, 578 S.W.3d 57, 66 (Tex. 2019) (actual notice requires that the governmental agency either "made the connection

18

between injury and responsibility as alleged, or had knowledge that the connection had been made").

We overrule the County's second issue.

### VII. CONCLUSION

Having reviewed the allegations and the jurisdictional evidence, we hold there is no reversible error in the trial court's denial of the County's amended plea to the jurisdiction. We affirm the trial court's order.


/s/    Tracy Christopher
        Chief Justice


Panel consists of Chief Justice Christopher and Justices Spain and Wilson.